86  1017
88   38
86  1017
98   211

# Staunton.

## JONES & ALS. V. CHRISTIAN & ALS.

### SEPTEMBER 17th, 1890.

1. FRAUDULENT CONVEYANCES—*Infancy—Innocent purchaser—Case at bar.*—
   That a person purchased goods on credit by means of fraudulent repre-
   sentations, or was under age at the time, is no ground for annulling a
   sale of the goods made to secure a debt for borrowed money due a per-
   son ignorant of such means, there being no collusion with the buyer to
   defraud other creditors.
2. IDEM—*Injunction—Plea of infancy.*—That supplemental bill adding to the
   original, only that purchaser of goods from complainants, intends to
   plead his non-age in bar of their claims, is no ground for refusing to
   dissolve an injunction restraining the buyer from selling the goods.
3. APPEALS—*General Assignments.*—An assignment that the court erred in
   dissolving an injunction, that specifies no error, cannot be considered on
   appeal.
4. ISSUE OUT OF CHANCERY.—Though answer under oath be waived, yet where
   the case made by the bill is not sustained by proof, an issue out of
   chancery should not be awarded.

Appeal from decrees of circuit court of King William
county rendered April 23d and May 4th, 1889, in the chancery
cause wherein Jones, Poindexter & Co. and others, creditors of
J. T. Christian, were complainants, and said Christian, John
W. Montague, and Julia C. Hudgins were defendants.  At the
hearing the bill was dismissed with costs, and the complain-
ants appealed.  Opinion states the case.

*Pollard & Sands* and *Isaac Diggs*, for the appellants.

*James N. Stubbs* and *R. L. Montague*, for the appellees.

RICHARDSON, J., delivered the opinion of the court.

The bill sets forth the several amounts alleged to be due from the defendant, J. T. Christian, to the plaintiffs respectively named in the bill, and alleges that, on the 13th day of March, 1889, the said J. T. Christian was indebted to the plaintiffs, respectively, in the several sums as therein set forth, for goods, wares, and merchandise theretofore sold by them and delivered to said J. T. Christian; and with their bill they exhibit itemized accounts of the amounts so alleged to be due them; that on the 11th day of March, 1889, the said J. T. Christian was possessed of valuable personal property in the town of West Point, to wit: a large stock of goods, wares, and merchandise, and being so indebted to the plaintiffs, on the same day conveyed the said stock of goods, wares, and merchandise to one John W. Montague, as appears by a bill of sale from the said J. T. Christian to said John W. Montague, filed with and as part of said bill, marked exhibit "B"; that on the same day the said Montague conveyed the said stock of goods to Mrs. Julia C. Hudgins, the grandmother of the said J. T. Christian, for the alleged consideration of $2,200, said to be due from the said J. T. Christian to the said Julia C. Hudgins; and also exhibiting with and as part of their bill the said last named bill of sale, marked exhibit "C."

Said bills of sale (exhibits "B" and "C") are in the words and figures following, to-wit:

### Ex. "B."

"Know all men by these presents that I, Julian T. Christian, of the town of West Point, state of Virginia, do hereby sell and deliver to John W. Montague my entire stock of goods, consisting of general merchandise, at cost price, an inventory of said goods to be taken, and terms made payable as follows: First, a debt due Mrs. Julia C. Hudgins for twenty-two hundred dollars, and interest thereon from the first day of October, 1888, must be secured by the said Mon-

tague giving and executing a deed of trust to the said Mrs. Julia C. Hudgins upon said goods; the remaining goods must be paid for in cash by the said Montague to the said Julian T. Christian, for the benefit of his creditors in Baltimore and elsewhere. Given under my hand and seal this 11th day of March, 1889.

"Julian T. Christian. [Seal.]"

The foregoing paper has on it the following official endorsement, to-wit:

"Virginia: In King William County Clerk's Office,

March 11th, 1889.

"The foregoing deed was this day received in the office, acknowledged by Julian T. Christian, whose name is signed thereto, and is thereupon admitted to record.

Teste:

Burnley Taylor, D. C.

A copy—Teste:

Burnley Taylor, D. C."

*Ex. " C."*

"This deed, made the 11th day of March, 1889, between John W. Montague, of the first part, and Julia C. Hudgins, of the second part: Whereas the said John W. Montague *have* purchased goods to the amount of twenty-three hundred and fifty-seven dollars from Julian T. Christian, and the said Julian T. Christian is indebted to Mrs. Julia C. Hudgins, for money borrowed from her to commence business with, in the sum of twenty-two hundred dollars, due by note bearing date 1st October, 1888. Now this indenture witnesseth, that the said Montague *do* hereby sell and convey to Mrs. Julia C. Hudgins this entire stock of goods, to secure her in the payment of the said debt, but whenever the said debt has been paid by the said Montague, then this deed to be null and void and no effect. Given under my hand and seal, year and date above written.

"John W. Montague. [Seal.]"

And this paper has on it this official endorsement, to-wit:

"VIRGINIA:

IN KING WILLIAM COUNTY COURT CLERK'S OFFICE,

March 11th, 1889.

"The foregoing trust deed was this day received in the office, acknowledged by J. W. Montague, whose name is signed thereto, as his act and deed, and is thereupon admitted to record.

Teste:

BURNLEY TAYLOR, D. C.

A copy—Teste:

BURNLEY TAYLOR, D. C."

After exhibiting these two papers, the bill charges: 1st. "That both of the said bills of sale are without consideration, null, and void, and made to delay, hinder, and defraud your orators and other creditors of the said J. T. Christian." 2d. "That the said J. T. Christian was not and is not indebted to the said Julia C. Hudgins in the sum of $2,200, or anything like that amount; that on the 11th day of March, 1889, the said J. T. Christian was heavily indebted, and, in fact, insolvent; that, as your orators are informed, the said John W. Montague is not pecuniarily responsible; that the said John W. Montague and Julia C. Hudgins knew of the fact that the said conveyances mentioned as exhibits 'B' and 'C' were made with the intent to delay, hinder and defraud creditors of the said J. T. Christian," &c.

The bill also alleges that notwithstanding John W. Montague conveyed said goods to Julia C. Hudgins, yet he is in possession of the same, and proceeding to sell the same at a "great reduction of prices for ten days only," as will appear by reference to a copy of a hand-bill published by said John W. Montague, which is filed with the bill, marked exhibit "D."

The bill then alleges that the goods, wares and merchandise conveyed by said Montague to Julia C. Hudgins were the very goods purchased of the plaintiffs, and other creditors of his, by

said J. T. Christian, and for which he is indebted to them; and that, although the debt secured by said bill of sale, marked exhibit " C," and the bill of sale itself, may be *bona fide*, yet that the plaintiffs and other creditors have the right to have the trust thereby created administered under the direction of a court of equity, to have said debt proved, and the balance of the proceeds of the property paid to the plaintiffs and other creditors. And the bill prays that said J. T. Christian, John W. Montague, and Julia C. Hudgins may be made parties defendant thereto, but waiving answers under oath; that all necessary accounts be taken and enquiries made; that the said J. T. Christian, John W. Montague and Julia C. Hudgins, their agents, attorneys and all others be enjoined and restrained from selling, transferring, or in any way interfering with said goods, wares and merchandise; that a receiver be appointed to take charge of said goods, " and such as are expensive or perishable to keep "; that both of said bills of sale be set aside and declared null and void; that judgment be rendered in favor of the plaintiffs, for the amounts due them, against said J. T. Christian; that if it be ascertained that said J. T. Christian is really indebted to the said Julia C. Hudgins, and the said bills of sale valid, the trust be administered under the directions of the court, the amount due the said Julia C. Hudgins paid, and the balance of the proceeds paid to the plaintiffs; and for general relief.

On the 16th of March, 1889, J. M. Jeffries, judge of the circuit court of King William county, granted the injunction, according to the prayer of the bill, and appointed the sheriff of said county receiver, to take charge of said stock of goods, &c.

At rules held for said county of King William on Monday, the 1st day of April, 1889, John W. Montague, Mrs. Julia C. Hudgins and J. T. Christian filed their several answers to the bill.

The defendant, John W. Montague, in his answer, positively

denies any knowledge of or participation in any fraud, as
charged in the bill, touching the transactions set forth in exhi-
bits "B" and "C," filed therewith, and he utterly denies any
purpose on his part to hinder, delay or defraud the creditors
of J. T. Christian by purchasing from him the stock of goods
and making the deed to Mrs. Julia C. Hudgins to secure her
twenty-two hundred dollars. He denies the charge in the bill
that he is not pecuniarily responsible; and says it is true he is
a young man, but he spurns with indignation the allegations
made by the plaintiffs attempting to cast upon him the impu-
tation of fraud in said transactions. And he further says that
he bought the goods of J. T. Christian, and paid him therefor
the sum of one hundred and fifty-seven dollars, and gave the
deed to Mrs. Julia C. Hudgins for the remainder of the pur-
chase money: and insisting upon the *bona fides* of the transac-
tion, so far as he is concerned, he asks that the injunction be
dissolved, and that the goods in the hands of the sheriff be
turned over to him, &c.

Mrs. Julia C. Hudgins, in her answer, after denying all
knowledge as to the indebtedness of J. T. Christian, and
emphatically denying any participation in any fraud, as charged
in the bill, proceeds to say, in substance: "Your respondent,
now in her seventy-fourth year, spurns the allegation in the
bill of fraudulent implication on her part in the execution of
papers 'B' and 'C,' exhibited with the bill, for the purpose
of hindering, delaying and defrauding the creditors of J. T.
Christian." And she further says that she will not rely on
mere legal technicalities to sustain her rights as set forth in
the paper "C," exhibited with the plaintiff's bill, but will
make a full statement of her claim against J. T. Christian, and
she proceeds to say: "Your respondent is the grandmother of
J. T. Christian. She has been, and is now, living in the fam-
ily of Mrs. F. J. Christian, the mother of J. T. Christian, at
West Point, Va. Years ago she appointed Hon. T. J. Chris-
tian her agent to collect and receive any money coming to her

from the estate of Houldin Hudgins, deceased, her late husband. Hon. T. J. Christian did act as the agent of your respondent, and received for your respondent the sum of twenty-six hundred and fifty-six dollars from said estate. Your respondent refers to the consolidated chancery causes of Charles H. Hudgins against Julia Hudgins, &c.; Houldin Hudgins' Ex'or against John B. Davis, &c., and Julia Hudgins against Charles H. Hudgins, &c., to show that she received a large amount in commutation of dower in the real estate owned by her husband at his death, located in Hanover, Gloucester and Mathews counties. The above-named causes are pending in the circuit court of Mathews county. The chancellor of the circuit court of Mathews county is the chancellor before whom this cause is pending."

She further says: "Your respondent authorized Hon. T. J. Christian to loan J. T. Christian the sum of twenty-two hundred dollars, having confidence in her said grandson, J. T. C., and took his note for the same. When a failure of J. T. Christian was evident, the said J. T. C. sold to John W. Montague his entire stock of goods, &c., and your respondent accepted the deed from John W. Montague (paper marked " C ") to secure the debt from J. T. Christian to your respondent, permitting said Montague to carry on the business, and receive from said Montague payments on the debt as best he could." And she denies all other material allegations in the bill affecting her rights.

The defendant, J. T. Christian, in his answer, admits that he is indebted to the plaintiffs for goods, wares and merchandise, but does not admit the various amounts to be due as alleged. He admits that Mrs. Julia C. Hudgins is his grandmother. But he denies emphatically that he made the sale set forth in paper " B " with intent to hinder, delay and defraud his creditors; he denies the statement in the bill that said sale to Montague was without consideration, and states positively that the consideration stated in said paper is correct,

and that he was and is indebted to Mrs. Julia C. Hudgins in the sum of twenty-two hundred dollars; and he denies the fraud charged against him, and insists that he had the right to make secure the debt due to Mrs. Julia C. Hudgins.

In the meantime, to-wit, on the 25th of March, 1889, the plaintiffs filed an amended and supplemental bill, in which it is suggested that, in addition to the parties plaintiff named in the original bill and those who had been made plaintiffs upon petitions subsequent thereto, still other creditors of J. T. Christian desired to come in by petition and be made parties plaintiff; and, after designating such parties and the amounts claimed by them, respectively, as such creditors, the amended and supplemental bill alleges as follows: "Your orators believe, and therefore further charge, that the property included in the bill of sale from J. T. Christian to John W. Montague was all the property owned by the said J. T. Christian; that he was at that time, and is now, hopelessly insolvent; that it is the purpose of the said J. T. Christian to plead infancy in defense of his said contracts with your orators, and that if he does plead infancy, and was, in fact, when the goods were bought of your orators, as aforesaid, an infant, and by this means repudiates and relieves himself of the contracts with your orators, then he cannot at the same time repudiate and claim the benefit of the said contract; and therefore, as the goods sold to said John W. Montague are the very goods for which the said debts to your orators, as hereinbefore set forth, are owing, a court of equity will declare the said sale to the said Montague, made, when an infant, by said Christian, null and void, and will take charge of said goods, and pay the proceeds of their sale to your orators, to whom they rightfully belong. Your orators therefore pray that the said J. T. Christian, John W. Montague and Julia C. Hudgins may be likewise made parties to this amended and supplemental bill, and required to answer the same, but your orators waive answer under oath, and your orators pray for the relief asked in the original bill," &c.

Subsequently, in vacation, to-wit, on the 23d day of April, 1889, the judge of said circuit court entered in the cause this order:

"This cause came on this day, by consent of parties, to be heard on the plaintiffs' bill and exhibits, the answers of the defendants, the exhibits filed, the examination of witnesses, and was argued by counsel.

"On consideration whereof, the court, being of opinion that the plaintiffs have utterly failed to make out the fraud charged in their bill, doth adjudge, order and decree that the injunction heretofore awarded in the cause, be, and same is hereby dissolved; and the court doth further adjudge, order and decree that the defendants recover of the plaintiffs their costs by them about this suit in this behalf expended."

The plaintiffs intimating a desire to apply for an appeal from this order of dissolution, on their motion, the same was suspended for forty days, &c.

On the 3d day of May, 1889, the defendant, J. T. Christian, filed his answer to the amended and supplemental bill, in which he says he does not, nor will he, plead infancy in defense of the debts due from him to the various parties plaintiff in the original and amended and supplemental bills; that he does not deny the correctness of the various claims of parties as set out in said bill, except as to the claims of I. Whitehill & Son, and he denies that he owes the said Whitehill & Son the sum of $495 25, with interest from 28th January, 1889. And this respondent further states that on investigating the account of Whitehill & Son, it will appear that he does not owe the item marked "3552—three overcoats, $10 30=$31 50" and with his answer he files certain exhibits touching the claim last named; but they need not be further noticed, as they are not material to the questions to be decided.

Prior to the order dissolving the injunction, depositions were taken by both parties. On the 4th day of May, 1889, the cause came on again to be heard, when, on the motion of Charles H.

Forsch and others, creditors of J. T. Christian, they were allowed to file their petitions, and become parties plaintiff in the cause; and the cause then came on, and was again heard upon the papears formerly read, the amended and supplemental bill and exhibits filed, the answer of J. T. Christian and replication thereto, the said petition, and the motion of the plaintiffs for an issue out of chancery, and was argued by counsel. On consideration whereof, the court, by its decree then entered, overruled said motion, and refused to set aside and annul as fraudulent and void the bills of sale in the bill and proceedings mentioned. But the court at the same time proceeded to decree in favor of the plaintiffs against J. T. Christian for the amounts of their claims respectively, as set out in the bill, except as to the claim of I. Whitehill & Son, which, being contested in part, the cause was, as to it, continued.

From the decree of April 23d, 1889, dissolving the injunction, and the decree of May 4th, 1889, refusing to set aside and annul as fraudulent and void the bills of sale in the bill and proceedings mentioned, the case is here on appeal.

I. The first assignment of error is the sweeping one, without any specifications, that the court erred in dissolving the injunction. Whether, in any given case, there is error in the decree dissolving or refusing to dissolve an injunction, depends necessarily upon the facts and circumstances of the particular case in hand. As this assignment specifies no error, it amounts to nothing.

II. The second assignment is that the court refused to read or consider the amended and supplemental bill on the hearing of the motion to dissolve the injunction.

This assignment is nothing more than a specification of ground of error, and should have been incorporated into the first assignment. But there is nothing in the record to indicate the existence of the fact as alleged. On the contrary, the decree of dissolution shows on its face that the motion to dissolve came on to be heard, by consent, upon the bill and exhib-

its, the answers of the defendants and exhibits, and the depositions of witnesses. Now, the amended and supplemental bill is but *the bill* in the cause, as it embodies the matter contained in the original, and simply adds the amended and supplemental matter. Tested, then, by the record, there seems to be no ground for saying that the court refused to read and consider the amended and supplemental bill.

Moreover, the amended and supplemental bill was filed only a few days (less than a month) before the motion to dissolve the injunction was heard. In fact, so far as appears by the record, it may have been filed after the time fixed (by agreement) for the hearing of the motion to dissolve; and the defendants may have had no notice of the filing of it prior to the time of hearing the motion.

But grant, for the sake of argument, that the amended and supplemental bill, as such, was ready for hearing, the judge might well have disregarded it, for it adds nothing material to the original, except to suggest new and additional parties plaintiff. The only supplemental matter is the allegation and charge that it was the purpose of the defendant, J. T. Christian, "to plead infancy in defense of his said contracts with your orators, and that if he does plead infancy, and was, in fact, when the goods were bought of your orators, as aforesaid, an infant, and by this means repudiates and relieves himself of the contracts with your orators, then he cannot at the same time repudiate and claim the benefit of the said contract," &c. Obviously no material issue was tendered by this allegation. It might have been ground for resorting to the attachment process, under certain circumstances, but could in no wise affect the rights of innocent third persons, creditors of J. T. Christian, who had previously purchased the goods from him, without any notice of or participation in any fraud perpetrated by him upon the plaintiffs, who sold and delivered said goods to him. The fact that it was the misfortune of the plaintiffs to sell their goods to J. T. Christian, an infant, and deliver the

same to him, he being a merchant engaged in the retail mercantile business at the time, might, had the goods been obtained from them by fraudulent means, have been all-sufficient for reclaiming the goods *in transitu*, or for arresting him from disposing of them by due process, but could be no ground for either granting or continuing an injunction affecting the rights of innocent purchasers from him. As well might it be said that the plaintiffs can pursue and have restitution from every customer to whom J. T. Christian sold a spool of thread or a pound of sugar or coffee.

The law, for wise purposes, secures to persons under twenty-one years of age the right to avoid their contracts entered into during infancy. It was, therefore, in no way material to the issue in this cause whether or not J. T. Christian intended to rely upon the defense of infancy.

It is, however, a pertinent fact that he had, prior to the filing of the amended and supplemental bill and prior to the hearing of the motion to dissolve the injunction, answered the original bill, and did not plead or rely upon the defense of infancy; and subsequent to the decree dissolving the injunction, he answers the amended bill, and distinctly disclaims any *intention* of pleading infancy. There is, therefore, nothing whatever in the suggestion that the defendant *intended* to plead infancy, and, consequently, nothing material in the amended and supplemental bill itself.

The whole question in the case is, was there, as charged in the bill, fraudulent collusion between J. T. Christian, John W. Montague and Mrs. Julia C. Hudgins? We hold, without hesitation, that there is not a fact or circumstance disclosed by the record, which, in sound reason, could be made to impute even the slightest shadow of any knowledge of or participation in any fraud, if any such there was, committed by J. T. Christian, either in purchasing the goods in question from the plaintiffs, or in afterwards selling the remainder of the stock to John W. Montague, the latter paying therefor to J. T. Chris-

tian the sum of $157 00, and assuming the debt of $2,200, due from J. T. Christian to Mrs. Julia C. Hudgins, and for which she held his bond.

The body and substance of the case is within a very narrow compass. Mrs. Julia C. Hudgins, through her son-in-law and agent, T. J. Christian, the father of J. T. Christian, and who had the possession and control of her means, loaned her grandson, the said J. T. Christian, $2,200, for which she held his bond. This loan was made by Mrs. Hudgins to her said grandson to enable him to commence the mercantile business at West Point, Va. Preparatory to commencing business at West Point, J. T. Christian made representations to the plaintiffs as to his property and means, as a basis of credit, and upon which he obtained credit from them. There is not a particle of proof, nor anything to raise a suspicion, that either John W. Montague or Mrs. Julia C. Hudgins had any knowledge of or participation in the representations thus made by J. T. Christian, and upon which he obtained the credit aforesaid. After J. T. Christian had conducted the mercantile business at West Point for some six months, it became evident that he must fail. Hence, on the 11th of March, 1889, in order to secure to his grandmother, Mrs. Hudgins, the said debt of $2,200 due her, and for which she held his note, dated 1st October 1888, Julian T. Christian sold the entire remainder of his stock of goods, in store, to John W. Montague, and set forth in the bill of sale that day executed, which is exhibit " B ", with the plaintiffs' bill; for which goods said Montague paid to J. T. Christian $157 00, and assumed the payment of the debt of $2,200 due from J. T. Christian to Mrs. Hudgins, making said Montague's purchase price amount to $2,357, paid and assumed to be paid by him.

The bill of sale from J. T. Christian to Jno. W. Montague, provides that the debt assumed by the latter should be secured by deed of trust on the same stock of goods, in favor of Mrs. Hudgins. Accordingly, on the same day, Jno. W. Montague

executed the bill of sale, (Exhibit "C,") to Mrs. Hudgins for the same goods, the paper providing that on the payment of said $2,200 by Montague to Mrs. Hudgins, said deed was to be null and of no effect. Thus Montague did, in effect, what he was required to do by the bill of sale from J. T. Christian to him; and having been put in possession of the goods by Christian, he very naturally remained in possession, so as to be able to make sales and pay Mrs Hudgins her debt; and he continued in possession, and was proceeding to perform his contract until arrested by this injunction.

The bill charges that J. T. Christian was not indebted to Mrs. Hudgins in the sum of $2,200, or anything like that amount; and that the sale from J. T. Christian to Jno. W. Montague, as well as that from the latter to Mrs. Hudgins, were but fraudulent devices on the part of J. T. Christian, with knowledge thereof and participation therein by Jno. W. Montague and Mrs. Julia C. Hudgins, and intended to hinder, delay, and defraud the plaintiffs.

Each of the defendants indignantly deny the fraud imputed to them. Prior to the decree dissolving the injunction, the plaintiffs took the depositions of sundry witnesses, all of which bear upon certain representations made by J. T. Christian to the plaintiffs, as to his property and assets, and made as a basis of credit, and upon which he actually obtained credit from them. There is, however, in all this mass of testimony, not a single fact or circumstance disclosed which even tends to fix upon either Jno. W. Montague or Mrs. Julia C. Hudgins, the charge of fraud so recklessly made in the bill. On the other hand, after setting out in her answer that she, through her agent, T. J. Christian, loaned her grandson, J. T. Christian, the $2,200, for which she took and holds his bond; and after showing that said T. J. Christian was her authorized agent and had her money in hand, which had been paid him under decrees of the circuit court of Mathews county, in the consolidated chancery causes of Chas. H. Hudgins against Julia Hudgins,

&c.; Houlden Hudgins' Ex'or against John B. Davis, &c.; and Julia Hudgins against Chas. H. Hudgins, &c., took the deposition of her said agent, who, in every respect, material to the case in hand, sustains the statements made by Mrs. Hudgins in her answer. There was then not the slightest conflict of evidence, touching the rights of John W. Montague and Mrs. Hudgins. T. J. Christian testifies that he was the authorized agent of Mrs. Hudgins, and had charge of her means which largely exceeded the sum of $2,200 loaned to J. T. Christian; that he received her money under decrees in the suits referred to by her in her answer; that the payments to him under said decrees were matters of record, and open to inspection; and that as such agent, he made said loan to J. T. Christian by the express direction of Mrs. Hudgins, and took his bond therefor and delivered it to her; and with his deposition, the bond is exhibited in evidence.

Thus it appears, that the plaintiffs' not only failed to prove their case as against Jno. W. Montague and Mrs. Hudgins, but that Mrs. Hudgins went forward and proved her case, as set up in her answer. Under such circumstances, it would have been passing strange had the circuit court done otherwise than enter a decree, as it did, dissolving the injunction. Nor is it surprising that the circuit court founded its decree, as the language of the decree shows, upon the fact that "the plaintiffs' have utterly failed to make out the fraud charged in the bill."

It is thus clear beyond question, that the court below did not err in its decree of the 23d of April, 1889, dissolving the injunction.

III. The third assignment of error goes to the decree of May 4th, 1889. It is that the court erred in refusing the motion of the plaintiffs for an issue out of chancery.

It is too plain for argument that this was no case for such an issue. In *Beverly* v. *Waldron*, 20 Gratt., 149, 154, it was said: "It seems to be the settled rule that in no case ought an issue to be ordered to enable a party to obtain evidence to make out

his case; that when the allegations of the bill are positively denied by the answer, and the plaintiff fails to furnish two witnesses, or one witness and corroborating circumstances in support of his bill, it is wrong in the chancellor to order an issue; that no issue should be ordered until the plaintiff has thrown the burden of proof on the defendant; that until the *onus* is shifted and the case rendered doubtful by the conflicting evidence of the opposing parties, the defendant cannot be deprived by the order of the court, for an issue, of his right to a decision by the court on the case made by the pleadings and evidence." Such was the well established rule for the guidance of the chancellor in such cases until the act of 1883–4 (Code 1887, sec. 3281) authorizing a plaintiff in equity in his bill to waive an answer under oath, &c. The effect of this statute is to modify the rule above stated as respects the effect of an answer where such waiver is made in the bill.

In the present case, the bill waived answer under oath, the effect of which is to deprive the answers of the defendants of that potentiality which, prior to the act above referred to, required the plaintiffs to furnish two witnesses, or one witness and strong corroborating circumstances in support of their bill, and by such means only to overturn the effect of the answer. Subject to such modification, in this and like cases, the rule, as above stated, remains unchanged; and now, as formerly, it is incumbent upon the plaintiff, though answer under oath be waived, to uphold the case made in his bill by competent and sufficient evidence, the answer in such case being equivalent to a traverse. It has already been shown that the plaintiffs produced no evidence whatever in support of their bill—certainly none affecting the rights of the defendants, John W. Montague and Mrs. Julia C. Hudgins. We are, therefore, clearly of opinion that the court below did not err in refusing the motion of the plaintiffs for an issue out of chancery.

IV. The fourth assignment of error is, that the court refused to execute the trust. It is difficult, if not impossible, to understand upon what ground this objection is predicated. No such

question was raised in the bill. It is for the first time brought out in the petition for appeal. In the petition it is said: "The other creditors of Julian Christain, even if the debt of Mrs. Hudgins were held valid, were interested in having that debt paid. Montague had not paid the purchase money, and, therefore, was not entitled to the protection of the court as a *bona fide* purchaser. The court should, therefore, have set aside the sale to Montague, executed the trust, paid Mrs. Hudgins what was due her, and given the rest to the creditors." This contention is self-destructive. How could the so-called trust have existed after setting aside the sale to Montague? The idea is absurd. The plaintiffs sold their goods to J. T. Christian on credit; and after selling by retail for some six months, he (J. T. Christian) sold the remainder of the stock of goods to Montague, and, in the bill of sale executed to the latter, required him to pay $157 cash, and to assume the payment of the Mrs. Hudgins' debt, and to secure the payment thereof to her by executing a trust deed on the same goods, which was, in effect, accomplished by the bill of sale from Montague to her. These transactions were had prior to any steps taken by the plaintiffs. It cannot be necessary to argue the proposition that J. T. Christian, though an infant when he purchased the goods from the plaintiffs, had as much right to sell them in lumps to Montague as to any or all of his retail customers, provided the transaction was not the result of fraudulent collusion between vendor and vendee, entered into for the purpose of defrauding the plaintiffs, and though they charge the fraudulent collusion in their bill, they utterly fail to establish it.

From what has already been said, it is plain that the court did not err in its decree of May 4th, 1889, in refusing to set said bills of sale aside as fraudulent and void. For the reasons aforesaid, the said decrees of April 23d, 1889, and May 4th, 1889, must be affirmed.

DECREES AFFIRMED.