# Richmond

## BALDWIN & BROWN AND OTHERS v. WINFREE'S ADMINISTRATOR AND OTHERS

March 12, 1914.

Absent, Cardwell, J.

1. FRAUDULENT CONVEYANCES—*Insolvency—Fraud—Notice to Grantee.*
   —Insolvency does not deprive the owner of the right to dispose of his property unless the sale or transfer is made with the intent to hinder, delay or defraud his creditors; and the law does not then invalidate the title of the purchaser or transferee if the sale or transfer is for valuable consideration, and the purchaser or transferee has no notice of the fraudulent intent of the grantor. In the case in judgment, the evidence fails to establish any fraud on the part of the grantee.

2. FRAUDULENT CONVEYANCES—*Relationship of Parties—Insolvency— Fraud—Burden of Proof.*—The relationship of the parties and the insolvency of the grantor in a deed, do not of themselves constitute badges of fraud and relieve the creditors of the grantor of the burden of proving the charge of fraud. Fraud is never presumed, but must be clearly and distinctly proved. But when a *prima facie* case of fraud has been shown by the plaintiff, the burden of adducing evidence shifts, and the defendant must establish the *bona fides* of the transaction.

Appeal from a decree of the Circuit Court of Chesterfield county. Decree for the defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*John W. Welsh* and *Haw & Haw,* for the appellants.

*J. Kent Rawley,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

This suit was brought by creditors of T. M. Winfree, deceased, to set aside a deed from him and his wife to R. W. Winfree conveying 94 acres of land in Chesterfield county, and also an option contract in which R. W. Winfree and his wife conferred upon Bettie J. Winfree, wife of T. M. Winfree, the exclusive option to repurchase the land (as the evidence showed) at any time within twelve months from the date of the contract. Both instruments are dated January 3, 1908. The consideration recited in the deed is $1,000 cash, and the assumption of payment by the grantee of a mortgage for $1,500 resting on the property. The consideration for the option contract is $1.00, in hand paid, and the agreement to pay $1,200 and also to discharge the mortgage.

These instruments, although dated in January, were not executed until the following October, and were admitted to record on the 16th day of that month.

The specific allegations of fraud in the bill are: That T. M. Winfree was insolvent at the time of the conveyance, which fact was known to R. W. Winfree; that the alleged cash payment of $1,000 was not a *bona fide* payment, but was colorable merely; that the price, if paid, was grossly inadequate; that there was no real change in the ownership or possession of the land up to the death of T. M. Winfree, which occurred shortly after the recordation of the deed; that the option contract was a mere device to open the way to a conveyance of the land to the wife of the grantor; and, finally, that both the deed and contract were made with intent to hinder, delay and defraud the grantor's creditors.

R. W. Winfree, in his answer under oath, made

specific denial of each of the charges of fraud, and by his answer and, more in detail in his deposition explains fully his connection with both transactions. In the decree appealed from the circuit court upheld the deed as a valid conveyance and dismissed the bill.

A review of the evidence would serve no good purpose, and we shall merely give the conclusions of fact drawn therefrom.

The debts are undisputed. The two Winfrees were brothers, and lived with their families on farms about one mile apart in Chesterfield county. The elder brother, T. M. Winfree, was a man of good character and standing in the community, and had been for many years, and was at the time of the sale of his land extensively engaged in the lumber business in Chesterfield and other counties in Virginia. Though the relations of the brothers were entirely friendly, they had never been associated in business, nor had they interchanged confidences or sought each other's advice in relation to their business matters. While. therefore, the evidence sustains the charge that T. M. Winfree was insolvent at the time of the sale. it does not show that R. W. Winfree was cognizant of that fact. Moreover. it plainly appears that the purchase was not of R. W. Winfree's seeking. but. on the contrary. that he was induced to buy the land on the insistence of his brother against his will and judgment.

On January 3. 1908. the parties met by agreement in the office of Chapin & Co.. real estate agents in the city of Richmond. where the deed was prepared. and then. for the first time. R. W. Winfree learned of the $1.500 mortgage and positively refused to consummate the agreement. About October 12. following. T. M. Winfree again pressed his brother to buy the land, assigning as the reason for selling that he needed the cash to make

a large consignment of lumber then awaiting shipment. Thereupon it was agreed that R. W. Winfree would purchase the property upon the terms stated in the deed of January 3, 1908. On October 12, 1908, they went again to the office of Chapin & Co. to have the deed written, but on ascertaining that the original draft was still in possession of Chapin & Co., it was executed without change of date, but was acknowledged on the day of its execution, October 12, and four days later was admitted to record.

The negotiation was not done secretly but openly in the presence of witnesses in due course of business, in a reputable real estate office in the city of Richmond. The circumstances that the dealing between the brothers was not clandestine and covered a period of nearly a year before completion, and that both deed and contract were promptly put upon record, tend strongly to sustain R. W. Winfree's version of the matter, that he purchased the land in good faith and at its market value as compared with sales of similar property in the neighborhood at that time. The deed recites the true consideration, and the cash payment was made by check over the counter of the Bank of Manchester in the ordinary course of business.

The execution by R. W. Winfree of the option contract, and the fact that there was no change in the possession of the property in the circumstances of the case, certainly do not tend to cast discredit upon his character. He knew that the land was bought by T. M. Winfree with his wife's money, and, for that reason, at her request, he gave her the option to repurchase it at any time within twelve months. His brother died within a few weeks after the sale, and from motives of charity R. W. Winfree suffered his widow and children and his

own widowed sister, all of whom were helpless and dependent, to continue to occupy the premises.

In light of the evidence, let us advert briefly to some of the settled principles of law bearing upon the questions involved.

"Insolvency does not deprive the owner of the right to dispose of his property, unless the sale or transfer is made with the intent to delay, hinder, or defraud his creditors; and the law does not then invalidate the title of the purchaser or transferee if the sale or transfer is for valuable consideration, and the purchaser or transferee has no notice of the fraudulent intent of the grantor." *Fisher* v. *Lee,* 98 Va. 165, 35 S. E. 441.

"The relationship of the parties and the insolvency of the grantor in a deed do not of themselves constitute badges of fraud and relieve the creditors of the grantor from the burden of proving the charge of fraud set forth in their pleadings. Fraud is never presumed, but must be clearly and distinctly proved. Yet, when a *prima facie* case of fraud has been shown, the burden shifts, and the defendant must establish the *bona fides* of the transaction." *Shoemaker* v. *Chapman Drug Co.,* 112 Va. 612, 72 S. E. 121.

These rules are fundamental and numerous decisions of this court illustrate the general doctrine.

For these reasons we concur in the conclusion of the circuit court, that the charges of fraud made in the bill have not been sustained. The decree is plainly right and must be affirmed.

*Affirmed.*