# Richmond

## HUTCHESON V. SAVINGS BANK OF RICHMOND.

January 28, 1921.

1.  FRAUD AND DECEIT.—*Allegation and Proof of Fraud—Presumption.*—Fraud must be clearly alleged and proved. Every presumption of law is in favor of innocence, and not of guilt.

2.  FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Proof Must be Clear and Convincing.*—In a suit to set aside a conveyance as in fraud of creditors, the proof must be clear, cogent, and convincing.

3.  FRAUD AND DECEIT.—*Burden of Proof—Circumstantial Evidence.* —The charge of fraud is one easily made, and the burden of proving it rests on the party alleging its existence. It may be proved, not only by positive and direct evidence, but by showing facts and circumstances sufficient to support the conclusion of fraud. But, however shown, the proof must be clear and convincing, and such as to satisfy the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge.

4.  FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Fraud Vitiates Conveyance.*—A fraudulent intent, concurred in by both grantor and grantee, always vitiates a conveyance, as indeed the statute declares affirmatively by pronouncing its nullity, and negatively by providing that it shall not be void if founded on a valuable consideration, and the grantee had no notice of the fraudulent intent.

5.  FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Badges of Fraud— Relationship.*—Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though when fraud is charged their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances.

6.  FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Badges of Fraud— Relationship—Case at Bar.*—Thus the relationship of the

36

parties in the instant case, father and son, and the insolvency of the grantor do not of themselves constitute badges of fraud, and relieve the creditors from proving the charges of fraud set up in their pleadings.

7. FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Burden of Proof— Explanation of Circumstances by Defendant.*—Until the facts and circumstances relied on and proved to establish fraud make out a case from which fraud will at least be presumed, the defendant to a bill to set aside a transaction as fraudulent is not required to explain such facts and circumstances, although they are not altogether free from suspicion.

8. FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Preferences Not Illegal.*—Save so far as prohibited by the bankruptcy act of Congress (U. S. Comp. St. secs. 9586-9656), neither at common law nor in Virginia is it immoral or illegal to prefer one creditor to another in a deed of assignment (neither having any lien), provided there is no design to secure some fraudulent or illegal pecuniary advantage or benefit therefrom to the debtor himself.

9. EVIDENCE.—*Witnesses—Presumption from Failure to Call Witnesses.*—There is no presumption against a defendant for failure to call witnesses when the plaintiff carrying the burden of proof has not made a *prima facie case*, and such presumption cannot be used to relieve the plaintiff from the burden of proving his case.

10. ANSWERS.—*Answer as Evidence—Waiver of Answer Under Oath.*—Where an answer under oath has been waived, the answer affords no evidence in favor of defendant, and amounts to nothing more than a traverse, serving to compel the plaintiff to prove the material allegations of his bill.

11. FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Grantee's Knowledge of Fraud—Facts and Circumstances Calculated to Excite Suspicion.*—In order to avoid a conveyance, it is not necessary to prove that the grantee had positive knowledge of the grantor's fraudulent intent. It is sufficient to prove that the grantee had knowledge of facts and circumstances, which were naturally and justly calculated to excite suspicion in the mind of persons of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor.

12. FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Circumstantial Evidence.*—While in a proceeding to set aside a conveyance as in fraud of creditors, the evidence must be sufficient to

satisfy the conscience of the court, it may and generally is circumstantial.

13. FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Proof of Fraud—Circumstances.*—If from the relations of the parties and surrounding circumstances a doubt is thrown around the payment in good faith of the consideration for the conveyance of the property, the grantee must prove the payment of the consideration, or the existence and *bona fides* of the debts if the conveyance was made to pay debts due to the grantee. A transaction may of itself and by itself furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of defendants, and even the testimony of witnesses.

14. FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Knowledge of Grantee.*—To vitiate a conveyance on the ground that it was made with intent to defraud the grantor's creditors, the grantee must have had notice of the grantor's intent.

15. BURDEN OF PROOF.—*Shifting of Burden of Proof.*—When a *prima facie* case of fraud has been shown, the settled rule is that the burden shifts, and the defendants must establish the *bona fides* of the transaction.

16. FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Burden of Proof as to Consideration—Recitals in Deed.*—In a suit by a creditor to set aside a deed as voluntary and fraudulent, the recitals in the deed that the consideration has been paid are not sufficient to establish that fact, and the burden of proving such payment rests upon the grantee.

17. STIPULATIONS.—*Effect of Agreement as to what a Witness will Testify to.*—An agreement that a witness, if put on the stand, will testify to a certain effect is not an agreement that his statements, if so made, are admitted to be true.

18. FRAUDULENT AND VOLUNTARY CONVEYANCES.—*Badges of Fraud—Evidence Held to Establish Fraud—Case at Bar.*—The parties to the conveyance in the instant case were father and son, the former the grantee, a bankrupt. The consideration for the deed was the indebtedness of the son to the father, the bulk of which was barred by the statute of limitations, which was the reason assigned by the father for not including the debt in his schedule in bankruptcy. There was nothing in the record to establish this alleged claim of the father against his son. No evidences of debt appeared to have been taken, nor payments of interest made. Two elements, commonly referred to by the authorities as badges of fraud, were present in the instant case, namely, the lack of itemized accounts, vouchers, etc., and the failure to examine as witnesses the persons having the best opportunities to know the facts.

*Held:* That these facts, together with the other circumstances of the case, were sufficient to make out a *prima facie* case of fraud, and to put upon the defendants the burden of vindication and explanation.

19. FRAUDULENT AND VOLUNTARY CONVEYANCES. — *Depositions — Time of Taking.*—In a suit to set aside a conveyance as in fraud of creditors at the hearing, counsel for one of defendants, the grantee, insisted that there was no proof of the value of the property conveyed. On the insistence of counsel the court stated that it would have proof of value put in the record, which was afterwards done. Counsel for grantee then moved to strike out this evidence, and upon indication of the court that it would overrule this motion, asked to be allowed ·to furnish further evidence on the merits. Thereupon, the court having previously indicated a decision adverse to defendants, refused to allow further evidence on the part of grantee.

*Held:* That there was no error in the action of the court. The admission of this matter did not create a new situation entitling defendants to take further testimony on the merits.

20. EQUITY.—*Request to Take New Testimony—Rehearing.*—A request at any equity hearing to take new testimony, which is practically a request for a rehearing, must set up the new matter, or distinctly state the evidence relied upon.

Appeal from a decree of the Chancery Court of the city of Richmond. Decree for plaintiff. Defendant appeals.

*Affirmed.*

The opinion states the case.

*Miller & Miller,* for the plaintiff in error.

*A. W. Patterson,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

This is a suit brought by the Savings Bank of Richmond to set aside, on· the ground of fraud, a deed made by J. C. Hutcheson to his father, John A. Hutcheson.

John A. Hutcheson, the appellant, conducted for many years a considerable and apparently. profitable business in

the city of Richmond in the sale and storage of leaf tobac-
cos on commission.   In the course of time Hutcheson be-
came heavily indebted to the Savings Bank of Richmond,
the aggregate of his indebtness in December, 1913, being
about $66,000 in various items.   The Savings Bank (plain-
tiff below) desiring to enter the Federal Reserve System,
required the appellant, John A. Hutcheson (a defendant
below), to reduce his indebtedness.   After some discussion
between the parties it was arranged that a note of the
father, John A. Hutcheson, for $5,000, part of the latter's
aggregate of indebtedness, should be replaced by a note of
the son, J. C. Hutcheson, for the same amount.   At the
same time John A. Hutcheson paid off a note of his son in
the bank for the sum of $375.   This note was protected
by eleven shares of Gordon Cigar and Cheroot Company
stock, supposed to be worth $100 a share.   The $5,000 note
of John A. Hutcheson was protected by thirty-two shares of
the same stock.   As a part of the above transactions, the
aggregate of the eleven and thirty-two shares of stock,
*supra,* or forty-three shares, was placed as security for
the replacement note of J. C. Hutcheson.   This note was
made on March 4, 1914, and renewed six times, the last
renewal being on March 1, 1915.   Interest on the original
note and renewals, amounting in the aggregate to $342.66,
was paid by John A. Hutcheson.

From the stipulation filed in the cause by counsel for
the parties, it appears that John A. Hutcheson filed his
petition in bankruptcy on March 30, 1915.   In due course
he was adjudicated a bankrupt.   In the answer of J. C.
Hutcheson is found the allegation that the president of the
bank, in March, 1914, knew that he (Hutcheson) was in-
solvent.   No effort is made to prove this, or any other
statement of the answer, but as affecting J. C. Hutcheson
it may be considered as an admission of insolvency at that
time.

On July 7, 1916, the wife of J. A. Hutcheson and mother of J. C. Hutcheson died. On the next day the said J. C. Hutcheson conveyed to his father all his interest in certain real estate in Richmond which passed to the former at the death of his mother. A few days later the wife of J. C. Hutcheson united with her husband in this deed. On July 19, 1916, the Savings Bank of Richmond brought a foreign attachment in equity against the grantor and grantee in the above conveyance to set aside same on the ground that it was made without any valuable consideration and with intent to hinder, delay and defraud the creditors of the grantor. Both of the Hutchesons answered this bill, denied the fraud, and insisted that the conveyance was for valuable consideration. In due course the plaintiff took and concluded its testimony on April 7, 1919. On June 4, neither of the defendants having taken any depositions, the plaintiff moved the court to speed the cause, and the defendants admitting that the plaintiff was entitled to an order, they were required to complete their depositions by June 12, and the plaintiff to complete its evidence in rebuttal by June 18, 1919. No depositions were taken under this order. The case was argued on June 23, counsel for all of the parties being present. Permission was given to counsel at this time to file written notes, all of these notes to be in on or before June 30.

In the course of the oral argument counsel for J. A. Hutcheson insisted that there was no proof in the record of the value of the property conveyed in the deed under attack. The trial judge stated that he knew the property and it was valuable, but on the insistence of counsel stated that he would have proof of value put in the record. It does not appear that any objection was made at this time to this announcement of the court's purpose. On June 27, 1919, the plaintiff gave notice to "J. C. and John A. Hutcheson, or H. R. Miller and Geo. W. Haw, their attor-

neys," that on June 30th it would take the deposition of H. Selden Taylor and others. This testimony related to the value of the property. Counsel for J. C. Hutcheson acknowledged service of the notice, but objected to the taking of further depositions. Counsel for J. A. Hutcheson refused to accept service of the notice, and endorsed on same an elaborate memorandum of protest. The deposition taken under the notice, *supra*, related solely to the value of the property, and, as will be noted, was taken on the initiative of the court. A letter from Mr. Fritz Sitterding to counsel for the bank, to the same effect as the deposition of Mr. Taylor, was admitted by the court in connection with the deposition.

It appears from the affidavit of counsel for John A. Hutcheson ("offered in support of a formal motion that his client be allowed until July 19 to take and file further evidence in his behalf, including the depositions of the two defendants"), that "affiant moved the court to strike out the deposition of Mr. Taylor. In the course of the argument on this motion Judge Moncure indicated that he would overrule the motion, and affiant asked to be allowed to offer further evidence in that event. The court then asked affiant if he wished to take the evidence of the defendants, and affiant replied that he wished to take other evidence including that of the defendants. Thereupon, the court having previously indicated a decision adverse to the defendants, said that the deposition of Taylor would be stricken out as to John A. Hutcheson, and that the said Hutcheson would not be allowed to offer any further evidence."

From the stipulation of facts mentioned, *supra*, it appears in paragraph 3: "That John A. Hutcheson did not list J. C. Hutcheson in his bankrupt papers as one of his debtors;" and in paragraph 4: "That if John A. Hutcheson were called as a witness to testify on the subject, he would swear that the reason his claim against J. C. Hutcheson was not

listed in said schedule was that it was for the most part barred by the statute of limitations."

On July 14, 1919, the chancery court entered a decree in which it held that the deed of J. C. Hutcheson and wife to his father was voluntary, fraudulent and void as to the plaintiff, and accordingly was set aside. From this decree an appeal was allowed by one of the judges of this court.

The estate conveyed in the deed, *supra*, was subjected to the plaintiff's claim with interest from April 30, 1915.

The petition assigns four errors:

First: "The failure of the court to quash the attachment."

Second: "The failure of the court to sustain the demurrer to plaintiff's bill."

Third: "The action of the court setting aside the deed of J. C. Hutcheson as 'voluntary, fraudulent and void,' and directing a sale of the property to satisfy the bank's claim."

Fourth: "It was error in the court, after the cause had been submitted and argued on June 23, to call for from the plaintiff and to permit the plaintiff to take and offer additional evidence, and this without sufficient notice to petitioner's counsel, and after the introduction of such additional evidence to refuse petitioner's application to be allowed to take further evidence, including the depositions of both defendants, within a short limit of time."

With respect to the first two assignments of error, the decree appealed from recites that they were neither argued nor insisted upon, and were therefore overruled. These assignments of error will not be considered by this court.

The third assignment requires a review and determination of the controversy on its merits.

There are no new questions of law involved, the controlling principles having been settled by numerous decisions of this court.

[1] It is a fundamental principle of law that fraud must be clearly alleged and proven. Every presumption

of law is in favor of innocence and not of guilt. *Engleby* v. *Harvey,* 93 Va. 445, 25 S. E. 225; *Shoemaker* v. *Chapman Drug Co.,* 112 Va. 612, 72 S. E. 121; *Johnson* v. *Lucas,* 103 Va. 36, 48 S. E. 497.

[2]    The proof in cases of this character must be clear, cogent and convincing. *Baldwin* v. *Winfree's Adm'r.,* 116 Va. 16, 81 S. E. 36.

[3]    The charge of fraud is one easily made and the burden of proving it rests on the party alleging its existence.   It may be proved not only by positive and direct evidence, but by showing facts and circumstances sufficient to support the conclusion of fraud.   But, however shown, the proof must be clear and convincing, and such as to satisfy the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge. *Redwood* v. *Rogers,* 105 Va. 155, 53 S. E. 6.

Fraud is not to be assumed on doubtful evidence, or circumstances of mere suspicion.   It must be clearly and distinctly proved.   The law never presumes fraud, but the presumption is always in favor of innocence and honesty. *New York Life Ins. Co.* v. *Davis,* 96 Va. 739, 32 S. E. 475, 44 L. R. A. 305.

[4]    A fraudulent intent concurred in by both grantor and grantee always vitiates a conveyance, as indeed the statute declares affirmatively by pronouncing its nullity, and negatively by providing that it shall not be void if founded on a valuable consideration, and the grantee had no notice of the fraudulent intent.    2 Minor on Real Property, sec. 1173.

[5, 6]    Relationship is not a badge of fraud, and there is no law which forbids persons standing in near relationship of consanguinity, affinity, or business, from dealing with each other, or which requires them to conduct their business with each other differently from the manner in which they deal with other persons, though when fraud is

37

charged their dealings with each other will be closely scrutinized, as they may strenghten a presumption arising from other circumstances. *Johnson* v. *Lucas, supra.*

The relationship of the parties (father and son) and the insolvency of the grantor, do not of themselves constitute badges of fraud and relieve the creditors from proving the charges of fraud set up in their pleadings.

[7] Until the facts and circumstances relied on and proved to establish fraud make out a case from which fraud will at least be presumed, the defendant to a bill to set aside a transaction as fraudulent is not required to explain such facts and circumstances, although they are not altogether free from suspicion. *Johnson* v. *Lucas,* 103 Va. 36. 48 S. E. 497.

[8] Save so far as prohibited by the bankruptcy act of Congress, neither at common law nor in Virginia is it immoral or illegal to prefer one creditor to another in a deed of assignment (neither having any lien), provided there is no design to secure some fraudulent or illegal pecuniary advantage or benefit therefrom to the debtor himself. Minor's Real Property, Vol. 2, sec. 1177, p. 1290; *Johnson* v. *Lucas, supra.*

[9] There is no presumption against a defendant for failure to call witnesses when the plaintiff carrying the burden of proof has not made a *prima facie* case, and such presumption cannot be used to relieve the plaintiff from the burden of proving his case. *Cooper* v. *Upton,* 60 W. Va. 648, 64 S. E. 523.

[10] The answers in this case (answer under oath having been waived) afford no evidence in favor of the defendants, and amount to nothing more than a traverse, serving to compel the plaintiff to prove the material allegations of his bill. *Jones* v. *Christian,* 86 Va. 1032, 11 S. E. 984.

The circumstances attending and following a transaction are often of such a character as to leave not even a shadow

of doubt as to the real object and motive of the parties engaged in it.   *Hazelwood* v. *Forrer,* 94 Va. 706, 27 S. E. 507.

[11, 12]   In order to avoid a conveyance, it is not necessary to prove that the grantee had positive knowledge of the grantor's fraudulent intent.   It is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of persons of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor. *Ferguson* v. *Daughtrey,* 94 Va. 308, 26 S. E. 822.

The evidence of fraud must be sufficient to satisfy the conscience of the court, but may and generally must be circumstantial.   *Moore* v. *Ullman,* 80 Va. 307.

"When the evidence shows a *prima farie* case of fraud, the burden shifts to the upholder of the transaction to establish its fairness. * * * The usual badges of fraud are: Gross inadequacy of price, no security taken for the purchase money; unusual length of credit; bonds taken at long periods; conveyance in payment of alleged antecedent indebtedness of father to son living together; * * * Any of these facts may make a case of *prima facie* fraud, calling on the parties for explanation.   Where to these *indicia* are added the absence of itemized accounts, vouchers, etc., * * and the failure to examine as witnesses persons having opportunities to know the facts; these things combined—held to establish the fraudulency of the conveyance" under attack.   *Hickman's Ex'r.* v. *Trout,* 83 Va. 478, 3 S. E. 131.

[13, 14]   If from the relations of the parties and surrounding circumstances a doubt is thrown around the payment in good faith of the consideration for the conveyance of the property, the grantee must prove the payment of the consideration, or the existence and *bona fides* of the debts if the conveyance was made to pay debts due to the grantee.

But to vitiate a conveyance on the ground that it was made with intent to defraud the grantor's creditors, the grantee must have had notice of the grantor's intent. *Hickman's Ex'r* v. *Trout,* 83 Va. 490, 3 S. E. 131; *Garland* v. *Rives,* 4 Rand. (25 Va.) 282, 15 Am. Dec. 756; *Todd* v. *Sykes,* 97 Va. 143, 33 S. E. 517.

A transaction may of itself and by itself furnish the most satisfactory proof of fraud, so conclusive as to outweigh the answer of defendants, and even the testimony of witnesses. *Parr* v. *Saunders,* 11 S. E. 979, 1 Va. Dec. 731.

[15, 16] When a *prima facie* case of fraud has been shown, the settled rule is that the burden shifts, and the defendants must establish the *bona fides* of the transaction. Moreover, in a suit by creditors to set aside a deed as voluntary and fraudulent, the recitals in the deed that the consideration has been paid, are not sufficient to establish that fact, and the burden of proving such payment rests upon the grantee. *Shoemaker* v. *Chapman,* 112 Va. 615, 72 S. E. 121. See also *Todd* v. *Sykes,* 97 Va. 143, 33 S. E. 517.

These citations sufficiently present the appropriate authorities, from the view-point both of the appellant and the appellee. It remains only to consider the facts presented by the record in the light of said citations. These facts are within a very brief compass.

The parties to the conveyance were father and son, the former a bankrupt. This last appears from the stipulation of July 14, 1919. The land conveyed purports to be in consideration of money loaned and advanced to J. C. Hutcheson by his father, "approximately $6,000, exclusive of interest." The deed does not show that the bulk of this alleged indebtedness was barred by the statute of limitations, but such is the fact. In the stipulation John A. Hutcheson states that if he "were called as a witness he would swear that the rea-

son his claim against J. C. Hutcheson was not listed in his schedule was that for the most part it was barred by the statute of limitations." There is nothing in the record to establish this alleged claim of the father against the son, since the affirmative allegations of the answers are not evidence, and are effective only to make these answers a traverse of the allegations of the bill.

The appellant insists that the effect of the stipulation is that the plaintiff "admits as evidence a statement from John A. Hutcheson that his claim, as set up in his answer against J. C. Hutcheson, is correct." This contention cannot be sustained. At most the language cited carries the implication that the father had a claim of some sort against his son, with the further specific statement that it had not been listed in the father's schedule for the reason that it was in the main barred by the statute. The plaintiff admits that if put on the stand the defendant would testify that he had a claim against the son, not listed in his schedule, for the reason given, *supra.*

[17] An agreement that a witness, if put on the stand, will testify to a certain effect is not an agreement that his statements, if so made, are admitted to be true. The fact that the father had not listed his alleged indebtedness against his son in his schedule carries an implication injurious to the claim of *bona fides* for that indebtedness. The defendant evidently recognized his plight in this regard, and his statement that as a witness he would testify that the bulk of this indebtedness was out of date, was his effort to parry this implication. But the attempted explanation is to his prejudice, since he does not explain why he failed to list that portion of his alleged claim which he admits was not barred. A bare statement that the bulk of an indebtedness which is set up as consideration for the conveyance of valuable real estate is barred by the statute of limitations is far short of supporting the *bona fides* of a transaction under investigation on the charge of fraud.

How much of the claim was barred, and how old were the items? If the claim represented an aggregate of loans, what, if any, were the securities for these items? These inquiries inevitably suggest themselves, and there is no answer afforded by the record. Even the meagre and unsatisfactory recitals of the deed are not evidence, since, "in a suit by creditors to set aside a deed as voluntary and fraudulent, the recitals in the deed that the consideration has been paid are not sufficient to establish that fact, and the burden of proving such payment rests upon the grantee." *Shoemaker* v. *Chapman, supra.*

It is perfectly true that persons standing in near relationship can deal with each other, and are not required to conduct such business differently from the manner in which they deal with other persons, though when fraud is charged their dealings with each other will be closely scrutinized, as they may strengthen a presumption arising from other circumstances. But if persons in the relationship of father and son, under the circumstances revealed in the case in judgment, insist upon this right as a ground of defense, the business between them should at least have been conducted according to accustomed usages of business, or else unfavorable conclusions will be drawn. A father can loan money to a son, but, as a business transaction, we would expect him to take some evidences of indebtedness for these loans. If it was intended and expected for them to be repaid, it is not likely that they would have been allowed to become, practically in their entirety, out of date. They were not available to be listed in bankruptcy as an asset with which to pay the father's debts, but later, under changed conditions, they are relied upon by the son as an effective means with which to avoid the discharge of his clearly established liabilities. The vice of the dealings between the father and the son, when asked to be considered as a business transaction, is that they do not appear to have been conducted according to the usages of business. Al-

though alleged to be loans, no evidences of debt appear to have been taken therefor, and no payments of interest ever made. Certainly there is no reference in the deed, or in the stipulation, to any bond, or note, given by the son, or the payment of any interest to the father, nor does the stipulation give any information of value concerning the age of this indebtedness. Conceding its original *bona fides,* it may be to the last degree stale and antiquated.

[18] The facts before the court when the case was submitted for consideration were sufficient to make out a *prima facie* case of fraud, and to put upon the defendants the burden of vindication and explanation. Two elements, commonly referred to by the authorities as badges of fraud when occurring in cases of this character, are present in the case in judgment, namely, the lack of itemized accounts, vouchers, etc., and the failure to examine as witnesses the persons having the opportunities to best know the facts. In addition, this case has one unusual feature of its own, recited *supra,* so that the atmosphere of suspicion certainly surrounds the dealings of the parties. From the nature of the transaction, the alleged consideration of the deed being in large part indebtedness admittedly barred by the statute and of unknown antiquity, and in other part indebtedness that was not listed by the father, the grantor could not have made the conveyance under attack without the knowledge on the part of the father of the improper intent. Certainly the facts would impute that knowledge to him. The principles in this connection, and how knowledge of the grantee and the real object and motive of the parties may be established, have been stated *supra.*

Evidence of fraud may be, and generally is, circumstantial, and the very nature of the transaction may of itself and by itself furnish the most satisfactory proof of fraud. In the case in judgment the defendants, with the most ample opportunity to take testimony, including their own, decided

to rest their defense on the record made up by the plaintiff, which closed its case on April 7, 1919. On June 4, the plaintiff moved the court to speed the cause, and the defendants admitted that it was entitled to an order. Thereupon the court required the defendants to complete their taking of depositions by June 12, and the plaintiff its rebuttal, if any, by June 18. On June 23 the case was argued.

[19] The action of the court, recited *supra,* in relation to the Taylor deposition, and the Sitterding letter, as well as in refusing to allow the defendants to take "further depositions," is assigned as further error. There was no error in the action of the court in receiving the deposition and letter. Before this evidence was admitted the defendants had made their election to stand on the record, and not risk the perils of cross-examination. The admission of this matter did not create a new situation entitling the defendants to take testimony on the merits. To allow the defendants, after they had been advised by the trial court of a decision adverse to their contention, to take evidence, including their own, which of deliberate choice they had declined to take, would be an unusual course and a dangerous precedent.

[20] Practically a request for a rehearing, the request to take testimony does not set up the new matter, or state distinctly the evidence relied upon. This was necessary. *Whitten* v. *Saunders,* 75 Va. 563. The action of the trial court refusing the request to take the testimony indicated in defendants' request was not an erroneous exercise of discretion.

There was no error in the finding of the trial court upon the record before it, and no error in refusing the defendants the opportunity to make a further record.

The decree of the Chancery Court of the city of Richmond is affirmed.

*Affirmed.*