PRESENT: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ.

FOX REST ASSOCIATES, L.P.

                                          OPINION BY
v.  Record No. 100434          JUSTICE LEROY F. MILLETTE, JR.
                                     September 16, 2011
ANNE B. LITTLE, ET AL.

            FROM THE CIRCUIT COURT OF HENRICO COUNTY
                      Gary A. Hicks, Judge

     In this appeal, we consider whether Fox Rest Associates,

L.P. (Fox Rest) presented sufficient evidence in its case in

chief to establish a prima facie case for its claims of

fraudulent conveyance and voluntary conveyance under Code

§§ 55-80 and 55-81, respectively.  We hold that, except for a

portion of the claims relating to the sale of certain

equipment, Fox Rest did so and therefore reverse the circuit

court's judgment granting the defendants' motion to strike.

                        I.  BACKGROUND

     Fox Rest was formed in 1981 to purchase Fox Rest

Apartments (the Apartments) as an investment.  George B. Little

(Mr. Little) served as trustee of Fox Rest's general partner,

and served as Fox Rest's legal counsel through his law firm,

George B. Little and Associates (GBL&A).  In 2002, a dispute

arose between Mr. Little and Fox Rest's limited partners, and

the limited partners asked Mr. Little to step down as general

partner.  Instead of stepping down, he sought a buyer for the

Apartments without the limited partners' knowledge.  Only after

he entered into an agreement to sell the Apartments did Mr. Little inform the limited partners about the sale. The Apartments were sold on January 30, 2003, and the proceeds were deposited into GBL&A's escrow account.

On February 4, 2003, after receiving complaints from the limited partners concerning the sale, Mr. Little informed them by letter that he was withholding a portion of the proceeds from the sale in anticipation of litigation against him. Mr. Little transferred $358,750, his commission from the sale (the Fox Rest Commission), from the GBL&A escrow account into an existing joint account at SunTrust Bank (the SunTrust Account) that he held with his wife, Anne B. Little (Mrs. Little).

In May 2003, the limited partners retained counsel and told Mr. Little that they intended to pursue legal action against him for his alleged mismanagement of Fox Rest. In the summer of 2003, Mr. Little sold Wilton Farm, a property that he owned in his name alone, and transferred the proceeds from the sale, which totaled $938,877.79 (the Wilton Farm Proceeds), into the SunTrust Account. In addition, between January 2004 and September 2006, Mr. Little deposited more than 60 wage checks totaling $446,413.42 into the SunTrust Account from GBL&A's account (the Wage Transfers).

On October 2, 2006, after receiving advice from her counsel, Mrs. Little entered into an agreement with Mr. Little

2

to purchase GBL&A's office equipment at its appraised value (the Equipment Sale). The agreement also called for Mrs. Little to lease the equipment back to the firm through the end of 2006, when Mr. Little planned to close the firm. Mrs. Little understood the Equipment Sale would prevent Mr. Little's creditors from taking the equipment and therefore would allow the firm to close in an orderly manner.

Meanwhile, the limited partners filed a derivative action against Fox Rest seeking damages for malpractice, double billing, excess commission, and additional taxes that they were forced to pay as a result of the sale of the Apartments. On September 11, 2006, the circuit court found Mr. Little and GBL&A jointly and severally liable to Fox Rest in the derivative action. We overturned a portion of the damages award on appeal. Little v. Cooke, 274 Va. 697, 652 S.E.2d 129 (2007). The parties ultimately settled the case, and approximately $865,400 of the judgment remains uncollected.

Unable to satisfy the judgment, Fox Rest filed this action against Mr. Little, Mrs. Little, and GBL&A (the defendants), seeking to void various transactions by Mr. Little as fraudulent conveyances and voluntary conveyances under Code §§ 55-80 and 55-81. Specifically, Fox Rest sought to void the following transactions: the transfers into the SunTrust

3

Account from the Fox Rest Commission, the Wilton Farm Proceeds, the Wage Transfers, and the Equipment Sale.

At trial, Fox Rest presented expert testimony from Matthew O. McDonald, a certified public accountant and fraud examiner. McDonald testified about Mr. Little's solvency, the use of the approximately $1.7 million in transferred funds, and whether the Equipment Sale was a fair market value transaction. McDonald opined that Mr. Little was insolvent from February 2003 through September 2006. In assessing Mr. Little's assets, McDonald stated that he credited Mr. Little with 100% ownership of assets held in his name alone, 50% ownership of assets held jointly with Mrs. Little, and no ownership credit for assets held as tenants by the entirety. On cross-examination, however, McDonald stated that if Mr. Little had been credited the assets held as tenants by the entirety, then he would have been solvent.

McDonald opined that Mrs. Little received a "minimum benefit" of $940,000 from the approximately $1.7 million in transfers that were challenged by Fox Rest. He concluded that $940,000 was used by Mrs. Little for tax payments, charitable giving, mortgage payments and expenses for various real estate holdings, and the purchase of a $21,000 rug. McDonald also opined that the Equipment Sale was not a "fair-market-value transaction," which he defined as an "arm's length," orderly

4

transaction, not hurried or forced, between unrelated parties. But he did not contest the equipment's appraised value.

Portions of Mr. and Mrs. Little's depositions were read into evidence. Mrs. Little testified that she was not aware of any specific deposits that were made into the SunTrust Account from January 2003 until the end of 2008, and that Mr. Little handled all of the couple's financial matters. According to Mrs. Little, Mr. Little and his firm managed the SunTrust Account. She stated that she would indicate how much money she needed for household expenditures for the week, and funds that she presumed came from the SunTrust Account would be deposited into her personal account. Although she had checks on the SunTrust Account, she did not use them unless instructed to by Mr. Little.

Mrs. Little admitted that she was aware of the problems between Mr. Little and the limited partners, and that she knew about the derivative action by early 2004. She testified that she agreed to the Equipment Sale on the advice of counsel to allow Mr. Little to close his law practice in an orderly manner.

In his deposition, Mr. Little said that the SunTrust Account was a joint account, but he acknowledged that he had "goofed" previously when he said that the account was held as tenants by the entirety. When asked whether Mrs. Little

provided valuable consideration for the challenged transfers, Mr. Little stated that "[h]er presence" with him throughout their marriage constituted valuable consideration.

At the close of Fox Rest's evidence, the defendants moved to strike. They argued that the evidence presented was not sufficient to establish a prima facie case for fraudulent conveyance or voluntary conveyance. They noted that the SunTrust Account was a joint account and was therefore reachable by Mr. Little's creditors. They contended that the deposits made into that account were not made with the intent to delay, hinder, or defraud Fox Rest from collecting its judgment. They also argued that the evidence did not establish a prima facie case for a voluntary conveyance because the transfers were supported by valuable consideration — Mrs. Little's services as a wife and homemaker throughout the couple's 50-year marriage. Additionally, Mrs. Little asserted that there was no evidence that she had notice of Mr. Little's alleged fraudulent intent regarding the transfers.

The circuit court granted the defendants' motion to strike. The court stated that there was no evidence that Mr. Little had any fraudulent intent or that Mrs. Little knew of any alleged fraudulent intent. It noted that the deposits were made to a joint account that was reachable by creditors and in existence prior to the transfers. The court concluded that

"there was not a case of hiding assets in this matter" and that "[t]here was nothing that changed."  We awarded Fox Rest this appeal.[*]

## II.  ANALYSIS

In reviewing a circuit court's judgment granting a defendant's motion to strike, we apply the following standard:

> When ruling on a motion to strike a plaintiff's evidence, a trial court is required to accept as true all evidence favorable to a plaintiff and any reasonable inferences that may be drawn from such evidence.  The trial court is not to judge the weight and credibility of the evidence, and may not reject any inference from the evidence favorable to the plaintiff unless it would defy logic and common sense.  On appeal, when this Court reviews a trial court's decision to strike a plaintiff's evidence, we likewise view the evidence in the light most favorable to the plaintiff.

TB Venture, LLC v. Arlington County, 280 Va. 558, 562-63, 701 S.E.2d 791, 793 (2010) (internal quotation marks and citations omitted).

### A.  Fraudulent Conveyance

We first consider Fox Rest's contention that the circuit court erred in striking its evidence in support of its fraudulent conveyance claim.  Fox Rest argues that its evidence, which must be viewed in the light most favorable to it, establishes a prima facie case for fraudulent conveyance.

---

[*] Mr. Little died after the trial.  Although counsel for Mr. Little and GBL&A filed a brief in opposition to the petition for appeal, he did not file a brief on the merits because he withdrew as counsel after Mr. Little's death.

For this reason, Fox Rest asserts that the circuit court erred in granting the defendants' motion to strike. We agree with Fox Rest.

Code § 55-80, which addresses fraudulent conveyances, states:

> Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or personal, every suit commenced or decree, judgment or execution suffered or obtained and every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

In a suit to set aside a fraudulent conveyance, proof of the fraudulent intent must be "clear, cogent and convincing." Hutcheson v. Savings Bank of Richmond, 129 Va. 281, 289, 105 S.E. 677, 680 (1921). Fraud may be proved not only by direct evidence, but also by circumstantial evidence. Id. In fact, "[b]ecause of the difficulty of establishing 'actual intent,' evidence of fraud may be, and generally must be, circumstantial." In re: Porter, 37 B.R. 56, 63 (E.D. Va. 1984).

Virginia courts have consequently relied upon presumptions of fraud, known as "badges of fraud," which consist of facts

8

and circumstances that establish a prima facie case of fraudulent conveyance. See, e.g., Hutcheson, 129 Va. at 291, 105 S.E. at 681. The badges of fraud include:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

In re: Porter, 37 B.R. at 63 (citing Hutcheson, 129 Va. at 291, 105 S.E. at 681).

Once a party has introduced evidence to establish a badge of fraud, a prima facie case of fraudulent conveyance is established. Temple v. Jones, Son & Co., 179 Va. 286, 298, 19 S.E.2d 57, 62 (1942). Once this is done, "the burden shifts, and the defendant must establish the bona fides of the transaction." First National Bank of Bluefield v. Pressley, 176 Va. 25, 28, 10 S.E.2d 526, 527 (1940).

Notably, a familial relationship between the transferor and the transferee is not itself a badge of fraud. Fowlkes v. Tucker, 164 Va. 507, 514, 180 S.E. 302, 305 (1935). But "transactions between husband and wife must be closely scrutinized, to see that they are fair and honest and not mere contrivances resorted to for the purpose of placing the husband's property beyond the reach of his creditors." Id. at

9

511, 180 S.E. at 303 (emphasis added).  In such cases, "only slight evidence is required to shift the burden of showing its bona fides."  Id. at 514, 180 S.E. at 305 (emphasis added).

Finally, in Hutcheson, we stated:

> In order to avoid a conveyance, it is not necessary to prove that the grantee had positive knowledge of the grantor's fraudulent intent.  It is sufficient to prove that the grantee had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of persons of ordinary care and prudence, and which would naturally prompt him to pause and inquire before consummating the transaction, and that such inquiry would have necessarily led to a discovery of the facts from which the law imputes fraud to the grantor.

Id. at 291, 105 S.E. at 680-81.

In this case, Fox Rest's evidence established a prima facie case of fraud against Mr. Little by demonstrating several badges of fraud, which shifted the burden of proof to the defendants.  First, Mr. Little retained an interest in the funds that he deposited into the SunTrust Account because the account was held jointly with Mrs. Little, giving each the right to access the funds.  Second, all of the transfers were made after Mr. Little was aware of the limited partners' dissatisfaction with his management of Fox Rest, which led to the derivative action.  Third, Mr. Little retained possession of GBL&A's office equipment after the Equipment Sale.

10

Additionally, Fox Rest's evidence need not show that Mrs. Little knew of Mr. Little's fraudulent intent.  As stated above, to impute Mr. Little's fraudulent intent to Mrs. Little, the evidence need only show that she "had knowledge of facts and circumstances which were naturally and justly calculated to excite suspicion in the mind of persons of ordinary care and prudence."  Id.

Mrs. Little stated that she knew about the problems between the limited partners and Mr. Little.  She also testified that she knew about the derivative action.  Further, it was during this time period that approximately $1.7 million was deposited into the SunTrust Account, which Mrs. Little held jointly with Mr. Little.  Despite Mrs. Little's testimony that her primary benefit from the joint account was for household expenses, McDonald opined that Mrs. Little received a "minimum benefit" of $940,000 from the challenged transfers.  Viewing these facts in the light most favorable to Fox Rest, Fox Rest's evidence was sufficient to impute Mr. Little's fraudulent intent to Mrs. Little.

In sum, Fox Rest's evidence was sufficient to establish a prima facie case for fraudulent conveyance.  This shifted the burden of proof to the defendants to establish the bona fides of the transactions.  The circuit court therefore erred in granting the defendants' motion to strike Fox Rest's fraudulent

11

conveyance claim with respect to the Fox Rest Commission, Wilton Farm Proceeds, and Wage Transfers, all of which were deposited into the SunTrust Account.

Because the circuit court granted the defendants' motion to strike at the conclusion of Fox Rest's evidence, the defendants did not have an opportunity to rebut the prima facie case of fraud as to the alleged fraudulent conveyances. But Fox Rest's own evidence, including the cross-examination of its expert, McDonald, established that the Equipment Sale was not made with fraudulent intent, but rather was a bona fide transaction. Fox Rest does not dispute that the office equipment was sold at fair market value or that the proceeds from the sale went into GBL&A's operating account and were not later transferred to the SunTrust Account. Although the sale of the equipment and subsequent lease back were accomplished to hinder or prevent Mr. Little's creditors from seizing the equipment prior to an orderly closure of the firm, the transfer did not constitute a fraudulent conveyance because the sale was at fair market value. The circuit court accordingly did not err in striking Fox Rest's fraudulent conveyance claim with respect to the Equipment Sale.

## B. Voluntary Conveyance

We now consider Fox Rest's argument that the circuit court erred in granting the defendants' motion to strike regarding

12

its voluntary conveyance claim. Fox Rest asserts that the circuit court erred by failing to address whether Mr. Little was insolvent when he made the alleged voluntary conveyances or whether he became insolvent upon making the conveyances. According to Fox Rest, the evidence proved that Mr. Little was insolvent when all of the challenged transfers were made. For this reason, Fox Rest asserts that the circuit court erred in granting the defendants' motion to strike.

Code § 55-81, addressing voluntary conveyance, states:

> Every gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made. Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

Unlike Code § 55-80, § 55-81 does not require a finding that the transferor acted with fraudulent intent. In re: Porter, 37 B.R. at 65. Rather, it provides that if a transferor is insolvent at the time a transfer is made, without valuable consideration, then the transfer shall be voidable by prior creditors. Id.

13

The circuit court's ruling did not address whether Mr. Little was insolvent when the conveyances were made or whether the conveyances were made for valuable consideration. Aside from the court's statement that it "looked at the standard[]" under Code § 55-81, the court did not discuss the elements of voluntary conveyance at all. Instead, the court focused its ruling on Fox Rest's fraudulent conveyance claim.

Considering the evidence presented in the light most favorable to Fox Rest, it established a prima facie case for Fox Rest's voluntary conveyance claim. As previously stated, McDonald opined that Mr. Little was insolvent from February 2003 through September 2006. All of the challenged transfers occurred during that period of time. McDonald described the method that he used in analyzing Mr. Little's solvency. When the defendants cross-examined McDonald regarding his method, he admitted that if he had credited Mr. Little with ownership of assets Mr. Little owned with Mrs. Little as tenants by the entirety, he would have concluded that Mr. Little was solvent in 2003. But McDonald did not state whether the transfers - approximately $1.7 million - would have rendered Mr. Little insolvent if he had credited Mr. Little with the assets held as tenants by the entirety. Viewing this evidence in the light most favorable to Fox Rest, we cannot conclude as a matter of law that Mr. Little was solvent when the transfers were made.

14

The circuit court thus erred in granting the defendants' motion to strike Fox Rest's voluntary conveyance claim.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court granting the defendants' motion to strike is affirmed in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>