**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3028
_____

JONATHAN KOHN, Trustee,

Appellant

v.

MCGUIRE WOODS; HAYMOUNT LIMITED PARTNERSHIP;
HAYMOUNT MEZZ; WC & AN MILLER INVESTMENT COMPANY;
WC & AN MILLER ESI VENTURES; WC AND AN MILLER DEVELOPMENT
COMPANY; EDWARD J. MILLER, JR.; ERNEST M. MILLER, JR.;
ROBERT R. MILLER; JOHN A. CLARK; VINCENT J. PASKO

_____

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-10-cv-05645)
District Judge:  Honorable Katharine S. Hayden

_____

Submitted under Third Circuit LAR 34.1(a)
on March 8, 2013

Before:  SCIRICA, JORDAN and ROTH, Circuit Judges

(Opinion filed: August 16, 2013)

_____

O P I N I O N
_____

**ROTH**, Circuit Judge

Jonathan Kohn, the bankruptcy Trustee of International Benefits Group (IBG), appeals the District Court's grant of summary judgment to Haymount Limited Partnership (Haymount), Haymount Mezz LLC (HMezz), Edward J. Miller, Jr., Ernest Miller, Jr., Robert R. Miller, Vincent J. Pasko, W.C. & A.N. Miller ESI Ventures LLC (Miller ESI), W.C. & A.N. Miller Investment Company (Miller Investment), W.C. & A.N. Miller Development Company (Miller Development) (collectively, the Haymount Defendants), and the law firm McGuire Woods. For the reasons that follow, we will affirm the judgment of the District Court.

## I.      Background[1]

Haymount, HMezz, Miller ESI, and Miller Investment are controlled by Miller Development, a family-owned real estate development company. Edward Miller, Ernest Miller, Robert Miller, and Vincent Pasko are shareholders and/or officers of corporate entities controlled by Miller Development.

In 2002, Haymount entered into a contract with IBG, providing that IBG would receive a $3 million finder's fee if IBG helped Haymount secure a source of funding to develop land owned by Haymount in Virginia. Haymount ultimately received funding for the project, borrowing $14 million from General Motors Acceptance Corporation (GMAC) and $5 million in mezzanine financing from HMezz. The deal closed in July 2004. On July 30, 2004, HMezz recorded its mortgage against Haymount.[2]

---

[1] We write primarily for the parties, who are familiar with the facts of this case. Therefore, we will set forth only those facts necessary to our analysis.

[2] During discovery, the Haymount Defendants could not produce bank records showing that the loan actually was made from HMezz to Haymount. However, the Haymount

2

On June 9, 2004, IBG demanded the finder's fee provided for in its contract with Haymount. Haymount refused to pay. After IBG filed for bankruptcy in July 2004, Kohn, in his capacity as IBG's trustee in bankruptcy, brought an adversary proceeding against Haymount, seeking to recover the finder's fee. In January 2010, Kohn obtained a $4,469,158 default judgment against Haymount, its two general partners (Haymount Corp. and Westminster Associates II, Inc.), and two of its officers (Edward Miller and John Clark).

In 2008, during the pendency of the litigation between IBG and Haymount, Haymount was close to defaulting on the $14 million loan from GMAC. To avoid default, Haymount found a buyer for the Virginia property, Avanti Properties Group II, LLP. Avanti satisfied GMAC's loan to Haymount. Avanti also paid $5 million to HMezz to satisfy the principal on Haymount's debt to HMezz. McGuire Woods advised Haymount and HMezz on the transaction.

On June 2, 2008, HMezz transferred the $5 million it received from Avanti to the corporate bank account of Miller Development. Shortly thereafter, Miller Development transferred approximately $500,000 to McGuire Woods to pay legal bills and distributed approximately $2.5 million to Miller Development's shareholders and officers. The balance of the $5 million was commingled with other funds in Miller Development's bank account.

---

Defendants proffered circumstantial evidence in the form of auditors' reports, emails, and deposition testimony to show that HMezz did, in fact, lend the $5 million to Haymount.

On October 29, 2010, Kohn, in his capacity as bankruptcy Trustee of IBG, filed the complaint in this case against the Haymount Defendants and McGuire Woods. Kohn asserted that the $5 million payment from Avanti to HMezz was a fraudulent transfer. Specifically, the complaint alleged that the Haymount Defendants and McGuire Woods conspired to sell Haymount's assets, use the proceeds to pay HMezz, and then transfer the money to Miller Development. Kohn alleges that these transactions were undertaken to make Haymount judgment-proof in the then-pending finder's fee litigation with IBG. The complaint alleged fraudulent conveyance, common law conspiracy, statutory civil conspiracy under Virginia law, aiding and abetting fraud, and creditor fraud.

On October 28, 2011, the parties filed cross-motions for summary judgment. The District Court denied Kohn's motion and granted summary judgment on all claims in favor of the Haymount Defendants and McGuire Woods. The District Court applied Virginia's fraudulent conveyance law and reasoned that, at the time of the sale to Avanti, HMezz's loan to Haymount created a secured interest that prevailed over IBG's then-unsecured interest. Consequently, because all of Kohn's claims rested on his fraudulent conveyance theory, Kohn was not entitled to recovery. This appeal followed.

## II.     Standard of Review

We exercise plenary review over a grant of summary judgment. *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012). Summary judgment is only appropriate when there is no issue in dispute regarding any material fact, such that the moving party is entitled to judgment as a matter of law. *Id*. A grant of

4

summary judgment is reviewed in the light most favorable to the non-moving party. *Id.* This means that all reasonable inferences must be drawn in the non-movant's favor. *Id.*

## III. Discussion[3]

Kohn argues that the District Court improperly granted summary judgment to the Haymount Defendants and McGuire woods for two reasons: (1) IBG's unrecorded breach of contract claim against Haymount is superior to HMezz's recorded mortgage against Haymount and (2) even though IBG's claim against Haymount was not recorded, there is no evidence that HMezz ever actually paid a loan to Haymount and therefore HMezz never secured an interest in Haymount. Neither argument has merit.[4]

### A. HMezz's Interest in Haymount is Superior to IBG's Interest

Kohn asserts that IBG's interest in Haymount is superior to HMezz's interest in Haymount. The basis for Kohn's argument is that Virginia's recording statute provides that certain unrecorded instruments—including claims related to "contracts in writing"—will have priority over a recorded mortgage if the mortgagee had notice of the unrecorded claim.[5] *See* Va. Code. Ann. § 55-58.2(3). Kohn then points to the fact that (1) IBG's claim was based on a written contract between IBG and Haywood and (2) HMezz (the mortgagee) was on notice of IBG's claim when HMezz recorded its mortgage. As a

---

[3] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1332, 1334, and 1367. We have appellate jurisdiction under 28 U.S.C. § 1291.

[4] Kohn also argues that he is entitled to summary judgment on his conspiracy and aiding and abetting fraud claims. Because we hold that the transfer between HMezz and Haymount was not fraudulent as to IBG, Kohn's conspiracy and aiding and abetting claims necessarily fail. We therefore will not address Kohn's arguments on these issues.

[5] The parties do not dispute that Virginia law applies.

result, Kohn argues that IBG's interest in Haymount is superior to HMezz's recorded mortgage against Haymount.

Kohn's argument is misplaced because the agreement between IBG and Haymount is not a "contract in writing" as defined by the Virginia recording statute. For purposes of the Virginia recording statute, a "contract in writing" is defined as "[a]ny such contract . . . as is mentioned in § 11-1, if in writing." Va. Code Ann. § 55-95. In turn, Section 11-1 mentions only contracts "made in respect to real estate or goods and chattels in consideration of marriage, or made for the conveyance or sale of real estate[.]" Va. Code. Ann. § 11-1.

Here, the agreement between IBG and Haymount does not fit within the definition of a "contract in writing" because it contemplated a finder's fee for financing. The agreement had nothing to do with a contract made in consideration of marriage, nor was the agreement "made for the conveyance or sale of real estate." Although the agreement was related to a real estate venture, this connection is too attenuated to bring it within the scope of the definition of "contract in writing." *See In re Smith*, 348 F. Supp. 1290, 1293-94 (E.D. Va. 1972). Therefore, Kohn's argument that IBG's agreement with Haymount was a "contract in writing" as defined by the Virginia recording statute fails. As a result, IBG's interest in Haymount is inferior to HMezz's recorded mortgage. *See* Va. Code Ann. § 55-96(A), (B). Consequently, the District Court correctly entered summary judgment in the Haymount Defendants' favor: HMezz's secured interest was superior to IBG's unsecured interest; therefore, the $5 million transfer from HMezz to Haymount was not fraudulent as to IBG's claim against Haymount.

6

**B.** **No Reasonable Jury Could Find that HMezz did not Enter into a Bona Fide Transaction with Haymount**

Kohn asserts that the District Court should not have granted the Haymount Defendants' motion for summary judgment because, viewing the evidence in the light most favorable to the non-moving party, the transaction between HMezz and Haymount was not bona fide. Consequently, Kohn posits that the transaction was not supported by valid consideration and it was therefore fraudulent as to IBG. *See In re Carr & Porter LLC*, 416 B.R. 239, 260 (Bankr. E.D. Va. 2009) ("[W]here a conveyance of property is not made in exchange for valuable consideration, that transfer is void as to creditors existing prior to the transfer."). Kohn raises two points in support of this argument: (1) the insider nature of the transaction is dispositive evidence of a fraudulent conveyance and (2) there is insufficient evidence showing that HMezz ever lent $5 million to Haymount. Neither argument has merit.

Kohn's argument that the insider relationship between HMezz and Haymount renders the transaction fraudulent as a matter of law is a misstatement of Virginia's fraudulent conveyance law. An insider transaction is not *per se* fraudulent. *Fox Rest Assocs., L.P. v. Little*, 717 S.E.2d 126, 132 (Va. 2011). Rather, such transactions "must be *closely scrutinized*, to see that they are fair and honest and not mere contrivances[.]" *Id.* (citation omitted). Thus, the insider relationship in this case does not automatically trigger a finding of a fraudulent conveyance.

Turning to Kohn's argument that there was insufficient evidence to conclude that HMezz lent $5 million to Haymount, this argument is also unpersuasive. Although the

7

Haymount Defendants failed to produce cancelled checks to prove that HMezz lent $5 million to Haymount, there was ample evidence of the loan's existence. Independent auditors' reports from 2004 and 2007 confirmed that the loan was made. Additionally, emails sent prior to the Avanti sale in 2008 and deposition testimony taken in 2011 confirm that the Haymount Defendants wanted to use proceeds from the Avanti sale to pay back the money lent by HMezz to Haymount. Kohn offered no record evidence suggesting otherwise. As a result, the District Court correctly concluded that there was no genuine issue of material fact as to whether HMezz lent $5 million to Haymount.[6]

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[6] To the extent that Kohn asserts that the evidence offered at summary judgment was inadmissible hearsay, this argument is unavailing because the Haymount Defendants would have been able to lay a proper foundation for the admission of this evidence at trial. *See J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).