COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Huff, Athey and Causey
Argued at Alexandria, Virginia


THERESE HARMON, AS TRUSTEE OF THE
 HARMON 1999 DESCENDANTS' TRUST,
 DERIVATIVELY ON BEHALF OF
 CGH INVESTMENT MANAGEMENT LLC

                                                        MEMORANDUM OPINION* BY
v.        Record No. 0123-23-4                          JUDGE CLIFFORD L. ATHEY, JR.
                                                        MARCH 12, 2024

WIND FIELDS FARM, LLC, ET AL.


                FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
                       J. Howe Brown, Jr., Judge Designate

           William T. DeVinney (James W. Hundley; Robert H. Cox; Briglia
           Hundley, P.C., on briefs), for appellant.

           William B. Porter (Michael K. Kim; Blankingship & Keith, P.C., on
           brief), for appellees.


        Therese Harmon, as trustee of the Harmon 1999 Descendants' Trust ("H99DT"), filed a

derivative cause of action on behalf of CGH Investment Management LLC ("CGH") alleging that

Wind Fields Farm, LLC ("WFF"), WFF Acquisition LLC ("WFF Acquisition"), Justine Fitzgerald,

and Germaine Harmon (collectively the "appellees") fraudulently conveyed certain trust property.

Upon the appellees' demurrer, the circuit court dismissed the derivative cause of action. On appeal,

H99DT contends that the claim for fraudulent conveyance on behalf of CGH was well pled and that

therefore the circuit court erred by sustaining the demurrer. Finding no error, we affirm the

judgment of the circuit court.

---

        * This opinion is not designated for publication. *See* Code § 17.1-413(A).

## I. BACKGROUND

"When reviewing a circuit court order dismissing a claim on demurrer, we accept as true all factual allegations in the complaint 'made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."'" *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Squire v. Va. Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)).

Charles M. Harmon, Jr. ("Charles") was a successful businessman and accumulated a substantial estate during his lifetime. He and his wife, Germaine, had four children, including their son, Tim Harmon ("Tim"). Following Charles' death, the remaining family members formed Traditions, L.P. ("Traditions") to manage the assets of his estate. Traditions later converted to CGH, a Florida limited liability company whose members include Germaine, Hercules Technology Company, the Charles M. Harmon Jr. Family Trust, and H99DT. Tim's wife, Therese, is the current trustee of H99DT, and both Tim and Therese, along with their children, are the beneficiaries of H99DT. Tim's mother, Germaine, formerly served as trustee of H99DT and has a controlling interest in CGH even though H99DT is CGH's majority member.[1]

On September 13, 2007, Traditions (now CGH) purchased a 453-acre estate located in Middleburg, Virginia (the "Farm Property") for $12.5 million. Traditions later conveyed the Farm Property to WFF, a wholly-owned subsidiary of Traditions (now CGH). On June 1, 2012, WFF and Tim entered a lease agreement, in which WFF agreed to lease the Farm Property to Tim for five years at a cost of one dollar per year. The lease agreement permitted WFF to terminate the lease early in the event the Farm Property was sold. On June 1, 2017, Tim's lease automatically renewed for an additional five-year term through June 1, 2022.

---

[1] The parties dispute H99DT's status as a member of CGH. As this appeal arises from the circuit court's dismissal of CGH's claims on demurrer, we accept the allegation that H99DT is the majority member of CGH as true. *See Patterson*, 301 Va. at 197. Because H99DT's amended complaint does not detail CGH's corporate or management structure, we also accept as true the allegation that Germaine controls CGH.

Beginning in 2018, the Harmon family members' relationships began to deteriorate. By November 2020, H99DT filed suit against Germaine in federal court alleging that she breached her fiduciary duty as H99DT's former trustee. A month later, Germaine created another entity, WFF Acquisition. "Using CGH's ownership of WFF," Germaine caused WFF to sell the Farm Property to the newly created WFF Acquisition for $9 million, which was less than the original purchase price. On January 6, 2021, WFF issued a notice to Tim terminating his lease of the Farm Property effective April 9, 2021. Tim and his family eventually vacated the Farm Property in June 2022.

Following Tim's vacation of the Farm Property, H99DT filed a complaint in the circuit court against WFF, WFF Acquisition, Justine Fitzgerald, and CGH, alleging that the Farm Property had been fraudulently conveyed to WFF Acquisition.[2] H99DT also filed a memorandum of lis pendens in the land records of Loudoun County notifying potential purchasers of the pending litigation related to the Farm Property. The defendants responded by filing a demurrer alleging that H99DT lacked standing to file the complaint and failed to adequately assert an actionable claim for fraudulent conveyance. Following the hearing on the demurrer, the circuit court sustained the demurrer and dismissed H99DT's complaint with leave to file an amended complaint.

H99DT then amended the complaint by alleging a derivative action on behalf of CGH to overturn the claimed fraudulent conveyance.[3] H99DT further claimed in its amended complaint that, after it initiated litigation against Germaine in federal court, "WFF and CGH . . . saw an opportunity to exact revenge" on Tim and his family by selling the Farm Property. In addition,

---

[2] Justine Fitzgerald is the trustee under the deed of trust currently securing the Farm Property.

[3] H99DT's amended complaint also alleged a claim on behalf of CGH against Germaine for breach of fiduciary duty, which it later nonsuited.

H99DT asserted that the sale of the Farm Property was not a bona fide sale, was well below fair market value, and was structured to evict Tim and his family. H99DT also alleged that WFF's fraudulent conveyance of the Farm Property deprived H99DT and CGH of ownership of the Farm Property or in the alternative, the conveyance deprived them of the Farm Property's full financial value, "which reflected the largest portion of the remaining capital assets held by CGH." Accordingly, H99DT prayed for the circuit court to declare the sale of the Farm Property from WFF to WFF Acquisition void and to enjoin WFF Acquisition from selling the Farm Property going forward.

In response, the appellees filed a second demurrer and moved to quash H99DT's lis pendens.[4] In the demurrer, the appellees asserted that H99DT was neither a member of CGH at the time WFF conveyed the Farm Property to WFF Acquisition nor did H99DT possess standing to assert a derivative claim on behalf of CGH. In addition, the appellees contended that CGH failed to state a claim for fraudulent conveyance because both CGH and WFF conveyed the Farm Property, to which H99DT responded by asserting that WFF was the only transferor of the Farm Property. H99DT also argued that it had stated a fraudulent conveyance claim on behalf of CGH because WFF's sale of the Farm Property deprived CGH of its legal right to an asset of its wholly-owned subsidiary.

During the December 16, 2022 hearing on the appellees' demurrer, the circuit court considered both H99DT's written and oral argument that "if [CGH] wasn't controlled by someone hostile to H99DT, [CGH] would have" stopped WFF from selling the Farm Property. After the hearing, the circuit court entered an order dismissing H99DT's fraudulent conveyance claim with prejudice and directing the release of H99DT's lis pendens. H99DT appealed.

---

[4] The appellees also filed a plea in bar, upon which the circuit court did not rule.

II. ANALYSIS

A. *Standard of Review*

"A demurrer tests the legal sufficiency of the facts alleged in a complaint assuming that all facts alleged therein and all inferences fairly drawn from those facts are true." *Givago Growth, LLC v. iTech AG, LLC*, 300 Va. 260, 264 (2021). "We examine the circuit court's decision to sustain [a] demurrer under a de novo standard of review because it is a pure question of law." *Butler v. Stegmaier*, 77 Va. App. 115, 125 (2023) (alteration in original) (quoting *Wilburn v. Mangano*, 299 Va. 348, 353 (2020)).

B. *The trial court did not err by sustaining the appellees' demurrer.*

On appeal, H99DT asserts that the circuit court erred by sustaining the appellees' demurrer because its amended complaint stated a valid claim for fraudulent conveyance on behalf of CGH. H99DT argues that its amended complaint stated a claim for fraudulent conveyance on behalf of CGH because the complaint alleged that CGH was an "other person" under Code § 55.1-400 and therefore entitled to claim the Farm Property, and further that WFF, as transferor, conveyed the Farm Property with intent to defraud CGH. H99DT asserts that its amended complaint demonstrated WFF's intent to defraud CGH because it alleged that WFF sold the Farm Property for "grossly inadequate consideration," specifically $3.5 million less than the fairly recent purchase price. H99DT further asserts that its amended complaint demonstrated WFF's intent to defraud CGH by alleging that WFF sold the Farm Property after H99DT sued Germaine in federal court. We disagree.

Fraudulent conveyance claims are governed by Code § 55.1-400, which provides:

> Every (i) gift, conveyance, assignment, or transfer of, or charge
> upon, any estate, real or personal, (ii) action commenced or order,
> judgment, or execution suffered or obtained, and (iii) bond or other
> writing given with intent to delay, hinder, or defraud creditors,
> purchasers, or other persons of or from what they are or may be
> lawfully entitled to shall, as to such creditors, purchasers, or other

persons or their representatives or assigns, be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor.

Under the statute, "[a] creditor seeking to void a conveyance as fraudulent must prove, by 'clear, cogent and convincing' evidence, that: 1) the grantor intended to delay, hinder or defraud his creditors, and 2) the grantee had notice of the grantor's fraudulent intent." *La Bella Dona Skin Care, Inc. v. Belle Femme Enters., LLC*, 294 Va. 243, 254 (2017) (quoting *Hutcheson v. Sav. Bank of Richmond*, 129 Va. 281, 289 (1921). "This evidentiary burden may, and often must, be satisfied with circumstantial evidence, as the participants in a fraud generally 'are not apt to discuss it.'" *Id.* (quoting *First Nat'l Bank v. Pressley*, 176 Va. 25, 28 (1940)).

"The quantum of circumstantial evidence required to void a conveyance necessarily varies depending on the 'peculiar facts and circumstances' of each case, but the law recognizes recurring scenarios from which fraud may be presumed." *Id.* (quoting *Temple v. Jones, Son & Co.*, 179 Va. 286, 298 (1942)). "These 'presumptions of fraud, known as "badges of fraud," [] consist of facts and circumstances that establish a prima facie case of fraudulent conveyance.'" *Id.* (alteration in original) (quoting *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 284 (2011). Such badges of fraud include:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

*Id.* (quoting *Little*, 282 Va. at 285). "Proof of a single badge of fraud is sufficient to establish a prima facie case of fraudulent conveyance; once that prima facie showing is made, the burden

shifts to the defendant to establish the bona fides of the contested transaction." *Id.* (quoting *Hutcheson*, 129 Va. at 291).

As a preliminary matter, we assume, without deciding, that H99DT has standing to bring a derivative action on behalf of CGH and that CGH has standing to bring a fraudulent conveyance claim against the appellees. *See Holman v. Commonwealth*, 77 Va. App. 283, 296 n.2 (2023) ("[T]he doctrine of judicial restraint requires us to 'decide cases "on the best and narrowest grounds available."'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))). Notwithstanding these assumptions and the allegations in H99DT's amended complaint challenging the propriety of WFF's sale of the Farm Property, the amended complaint fails to state a claim for fraudulent conveyance because it does not demonstrate that WFF intended to "hinder, delay, or defraud" CGH. Code § 55.1-400. To the contrary, the amended complaint affirmatively demonstrates that CGH, as the sole member of WFF, directed WFF's actions. Specifically, the amended complaint alleges that Germaine used "CGH's ownership of WFF" to sell the Farm Property. Moreover, the amended complaint also alleges that "WFF and CGH" did so to "exact revenge" on Tim and his family.

By conceding that CGH orchestrated the sale of the Farm Property through WFF, H99DT's amended complaint affirmatively demonstrates that WFF did not sell the Farm Property with the intent to "hinder, delay, or defraud" CGH. Code § 55.1-400. Indeed, CGH can hardly claim that WFF hindered, delayed, or defrauded it by following its directions. *See Defraud, Black's Law Dictionary* (11th ed. 2019) (defining defraud as "[t]o cause injury or loss to (a person or organization) by deceit; to trick (a person or organization) in order to get

- 7 -

money").  Therefore, we hold that the circuit court did not err by sustaining the appellees'

demurrer and dismissing CGH's fraudulent conveyance claim with prejudice.[5]

III. CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[5] In its second assignment of error, H99DT also argues on appeal that the circuit court erred by ordering the release of its lis pendens because its amended complaint stated a claim for fraudulent conveyance on behalf of CGH.  As we hold that the circuit court properly dismissed CGH's fraudulent conveyance claim with prejudice, we further hold that the circuit court did not err by ordering the release of H99DT's lis pendens.  *See Young-Allen v. Bank of America, N.A.*, 298 Va. 462, 471 (2020) ("A notice of lis pendens is 'merely a notice of the pendency of the suit to anyone interested and a warning that he should examine the proceedings therein to ascertain whether the title to the property was affected or not by such proceedings.'" (quoting *Harris v. Lipson*, 167 Va. 365, 372 (1937))).