# COURT OF APPEALS OF VIRGINIA

### Record No. 0025-25-4

## M.C. DEAN, INC.
v.
## MICHAEL V. PERCH, ET AL.

Present: Judges Ortiz, Raphael and Lorish
Argued at Richmond, Virginia

Opinion Issued June 23, 2026[*]

## FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Kathleen M. Uston, Judge

Thomas R. Lynch (Asmar, Schor & McKenna PLLC, on briefs), for appellant.

David C. Jones, Jr. (Law Office of David C. Jones, Jr., on brief), for appellees.

## MEMORANDUM OPINION BY
## JUDGE DANIEL E. ORTIZ

After a government construction contract went awry, Government Systems, Inc. ("GSI"), a contractor, failed to pay two invoices to M.C. Dean, Inc. ("M.C. Dean"), a subcontractor. To recoup its loss, M.C. Dean filed this fraudulent conveyance action to void five payments that GSI made to Roadmap Consulting, LLC ("Roadmap"), payments that M.C. Dean contends GSI made to avoid paying its debt. The trial court disagreed. On appeal, M.C. Dean argues the trial court erred by: (1) analyzing whether consideration supported GSI's payments to Roadmap, (2) failing to shift the burden to Roadmap to prove the payments were legitimate, (3) prohibiting M.C. Dean from impeaching an adverse witness, and (4) failing to rule on M.C. Dean's motion to reconsider. But finding no reversible error, we affirm the trial court's judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

M.C. Dean and GSI are two contractors who worked together on a government project. GSI was owned by Simone Perch ("Simone"). Roadmap, a third company owned by Michael Perch ("Perch"), Simone's husband, provided consulting services to companies seeking government contracts and certifications. Through Roadmap, Perch worked with GSI to solicit business and manage government projects, including the contract at issue here.

M.C. Dean performed work as a subcontractor for GSI on the "Knowledge Wall" contract, which involved the installation of a roughly 20-feet-wide LCD screen for the Transportation Security Administration ("TSA"). Following completion of the work, GSI failed to pay two invoices from M.C. Dean, dated May 7 and July 8, 2015. On March 8, 2016, an M.C. Dean employee emailed several GSI employees, including Michael Perch, to notify them that M.C. Dean would take "further action to secure the balance" of the unpaid invoices. Then, between March 11 and May 16, 2016, GSI made five payments to Roadmap, while leaving M.C. Dean's invoices unpaid. M.C. Dean filed suit in the District of Columbia Superior Court to collect the debt, obtaining default judgment against GSI.

When M.C. Dean was unable to collect from GSI, it filed this suit against Michael Perch, individually, and Roadmap, to void the five payments from GSI. In its complaint, M.C. Dean asserted claims of: (1) fraudulent conveyance against both Perch and Roadmap, and (2) piercing the corporate veil against Perch as the owner of Roadmap.

At trial, M.C. Dean first called Carlton Conley, an M.C. Dean employee who managed accounts receivable. He was responsible for pursuing outstanding invoices, including those to GSI. Conley and Perch exchanged several emails about the outstanding balance before GSI shut down its website and disconnected its phone line. While Perch first told Conley there was no reason to be alarmed, he soon admitted that GSI was experiencing financial trouble. In May of 2016, Perch

notified Conley he was "no longer with GSI as of May 12," and passed the invoice issue on to another GSI employee. On cross-examination, Conley acknowledged that GSI was not obligated to pay M.C. Dean until the TSA issued the final payment for the Knowledge Wall project. It is unclear whether the TSA ever paid GSI.

M.C. Dean next called Ryan Byrd, a fraud examiner. Byrd reviewed the history of GSI's payments to Roadmap. He described how GSI usually paid Roadmap in multiples of ten, atypical in accounting, and the payments often lacked documentation. He noted that Michael Perch was the sole owner of Roadmap, and was married to Simone Perch, an owner of GSI. Byrd described the timeframe in which invoices would come due—"when services are performed a business earns the right to recover"—and noted that performance entitles a business to send an invoice. On cross-examination, Byrd summarized Perch's work for GSI. He explained that Perch was a vice president responsible for soliciting government contracts, managing day-to-day operations, and consulting on business development—all work a business would typically pay an employee to perform.

Simone Perch then testified. Simone was an owner of GSI but agreed that her role was that of an "absentee owner," lacking duties in the company despite her official title. Simone described Michael Perch's role within GSI as the company's "brain trust," helping to navigate government contracts and solicit business. While Michael Perch performed this work as a consultant for GSI, Roadmap was his employer, so GSI paid Roadmap for Michael Perch's work. Without Roadmap, GSI would have paid another consultant for the same work.

Finally, M.C. Dean called Michael Perch as an adverse witness. Perch testified to Roadmap's services. Roadmap helped companies obtain Small Business Association designations, like "Woman Owned" or "HUBZone" certifications. These certifications helped companies solicit government contracts. Within GSI, Perch worked as a vice president and officer. He testified to his role within GSI, GSI's business structure, and the payments between GSI and Roadmap. When

asking Perch about work he performed for GSI, counsel for M.C. Dean twice attempted to impeach Perch with a prior deposition. The trial court sustained both of Roadmap's objections to M.C. Dean calling a witness solely to impeach his credibility.

At the close of M.C. Dean's case, Roadmap moved to strike. Ruling that M.C. Dean could not recover from Michael Perch personally and that there was no evidence that GSI paid Perch directly, the court granted Roadmap's motion to strike M.C. Dean's fraudulent conveyance claim against Perch. Considering the fraudulent conveyance claim against Roadmap, however, the court denied the motion, reasoning that Roadmap knew the invoices to M.C. Dean were due, Perch knew about the payments to Roadmap, and Perch may have retained an interest in the funds both before and after GSI paid Roadmap. But the court clarified that it had not found that M.C. Dean had proven a badge of fraud: "I'm not making a ruling as to whether those badges—the evidence has been presented sufficient to meet the plaintiff's burden on that point. This is only for the purposes of the motion to strike."

In its case, Roadmap called Ron Foushee, a GSI employee. Foushee managed GSI's projects with the TSA, including the Knowledge Wall project. Foushee was responsible for corresponding with subcontractors and reviewing invoices. Foushee testified that delays in the Knowledge Wall project led to GSI's failure to pay M.C. Dean. The TSA did not approve payment to GSI until early 2016. Foushee maintained that GSI was not obligated to pay M.C. Dean until first paid by the TSA, regardless of when M.C. Dean billed GSI for its work.

Foushee worked closely with Michael Perch. When asked what services Perch performed for GSI, Foushee joked, "What wasn't he doing?" Foushee described that Perch provided consulting services to GSI, managed government projects, and solicited new business for the company. Through Perch and another consultant, Roadmap helped GSI with "business development." When M.C. Dean recalled Foushee on rebuttal, Foushee elaborated on the

relationship between GSI and Roadmap, explaining that the two companies "shared resources," including a receptionist.

Following trial, the court ruled for Roadmap on both the fraudulent conveyance claim and the piercing claim. The trial court found that GSI and Roadmap had a business relationship predating GSI's work with M.C. Dean, wherein it was typical for GSI to pay Roadmap in "round numbers." While GSI's payments to Roadmap lacked documentation, the court found that GSI paid Roadmap for Perch's work, without any intent to "delay, hinder, or defraud." Finding that M.C. Dean did not prove GSI paid Roadmap with the intent to defraud, the trial court entered judgment in favor of Roadmap.

The trial court entered the final order on December 4, 2024. On December 20, M.C. Dean filed a motion to reconsider, arguing it presented sufficient evidence to prove a badge of fraud, and the burden should have shifted to Roadmap to prove the payments were legitimate. The trial court's jurisdiction expired five days later, and the court never ruled. M.C. Dean now appeals.[1]

ANALYSIS

I. M.C. Dean failed to prove by clear and convincing evidence that GSI's payments to Roadmap were fraudulent.

In its first two assignments of error, M.C. Dean challenges the trial court's judgment in favor of Roadmap, arguing the trial court erred by: (1) unnecessarily analyzing whether consideration supported GSI's payments to Roadmap,[2] and (2) failing to shift the burden of proof to Roadmap. We address each argument.

---

[1] M.C. Dean's appeal is limited to its fraudulent conveyance claim against Roadmap, "focused on the five transfers from GSI to [Roadmap] on and after March 11, 2016, which total $53,750."

[2] In its first assignment of error, M.C. Dean further argues that the trial court erred by interpreting the parties' contract to find that GSI was not yet indebted to M.C. Dean at the time of the contested payments. Assuming without deciding that GSI was indebted to M.C. Dean at the time of the payments, we nonetheless conclude that the trial court did not err by analyzing

When reviewing decisions involving mixed questions of law and fact, we "afford deference to the trial court's factual findings" and "review de novo its application of the law to the facts." *Grayson v. Westwood Bldgs. L.P.*, 300 Va. 25, 58 (2021). Considering the factual findings below, "we ask whether they are 'plainly wrong or without evidence to support [them].'" *Id.* (alteration in original) (quoting Code § 8.01-680). "How the governing legal standard applies to those presumptively correct facts, however, is a question of law entitled to no deference on appeal." *Id.*

> A. The trial court did not err by considering whether GSI's payments to Roadmap were in exchange for Michael Perch's work.

Under Code § 55.1-400, when a debtor conveys property to a third party with the intent to "delay, hinder or defraud" a creditor, the conveyance is void:

> Every (i) gift, conveyance, assignment, or transfer of . . . any estate, real or personal . . . given with intent to delay, hinder or defraud creditors, purchasers, or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, . . . be void. This section shall not affect the title of a purchaser for valuable consideration, unless it appears that he had notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such a grantor.

The statute "condemns transactions that would otherwise be lawful when they are 'done with a vicious intent.'" *La Bella Dona Skin Care, Inc. v. Belle Femma Enters., LLC*, 294 Va. 243, 253 (2017) (quoting *Davis v. Turner*, 45 Va. (4 Gratt.) 422, 429 (1848)). Thus, a creditor seeking to void a fraudulent conveyance must prove, "by 'clear, cogent and convincing' evidence, that: 1) the grantor intended to delay, hinder or defraud his creditors, and 2) the grantee had notice of

---

whether those payments were in exchange for Michael Perch's work. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[T]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

the grantor's fraudulent intent." *Id.* at 254 (quoting *Hutcheson v. Sav. Bank of Richmond*, 129 Va. 281, 289-91 (1921)).

Whether consideration supports a conveyance is relevant to whether the debtor intended to "delay, hinder or defraud." *Fox Rest Assocs., L.P. v. Little*, 282 Va. 277, 286 (2011) (holding a debtor's sale of farm equipment lacked fraudulent intent because it was in exchange for fair market value). "A conveyance for the sole purpose of discharging an honest debt . . . is outside the statutory prohibition against fraudulent conveyances." *Grayson*, 300 Va. at 55 (citing 15A William Meade Fletcher & Carol A. Jones, Fletcher Cyclopedia of the Law of Corporations § 7406, at 139 (2018) rev. vol.). Evidence that a debtor conveyed property to satisfy a debt tends to negate an inference of fraudulent intent: "A conveyance to a bona fide creditor presupposes that the debt is owed because of a legal or a moral duty to pay supported by consideration deemed valuable in law." *Id.* at 55-56.

Whether consideration supported GSI's payments to Roadmap is relevant to whether GSI intended to hinder M.C. Dean's collection efforts. The trial court found that Michael Perch performed several services for GSI as a consultant and that he was entitled to be paid for his work. The evidence supported that finding. The court relied on testimony from Ron Foushee, a GSI employee who worked with Perch, and Simone Perch, owner of GSI. In his role, Foushee reviewed GSI's vendor payments to contractors. As Foushee described, GSI would not have received several of its government contracts without Perch. Similarly, Simone called Michael Perch the "brain trust" of GSI, who kept GSI in business. Foushee considered Perch's work "indispensable" to GSI—he assumed GSI reimbursed Roadmap for Perch's work.

The testimony of M.C. Dean's fraud examiner, Ryan Byrd, did not contradict that of Foushee and Simone. While Byrd testified that several of GSI's payments to Roadmap lacked documentation, he did not deny that GSI owed Roadmap for Perch's work. Byrd noted that GSI

became liable for a debt when a contractor performed a service. That liability applied to GSI's debts to Roadmap with equal force as to its debts to M.C. Dean.

Having considered the evidence, the trial court found that GSI paid Roadmap not with the fraudulent intent to delay payment to M.C. Dean but to compensate Perch for his work. True, Byrd testified that some of the contested payments lacked documentation, which the court acknowledged. Nonetheless, the court found that "Mr. Perch was working for Roadmap and . . . GSI agreed to reimburse Roadmap for Mr. Perch's work." "[I]nadequate supporting documentation alone was not sufficient" to prove the transfers were fraudulent. In other words, the presence of consideration—Perch's work for GSI—negated an inference of fraudulent intent. *See Grayson*, 300 Va. at 56.[3]

Whether GSI's payments to Roadmap were in exchange for Perch's work was relevant to whether GSI transferred funds with fraudulent intent, and the trial court's analysis recognized that GSI's discharge of an honest debt was "outside the statutory prohibitions against fraudulent conveyances." *Id.* at 55. Accordingly, the trial court did not err by weighing whether consideration supported GSI's payments to Roadmap.

> B. Given that M.C. Dean did not prove a badge of fraud, the burden did not shift to Roadmap to prove the legitimacy of the payments.

Given that "participants in a fraud generally 'are not apt to discuss it,'" a plaintiff often must satisfy the evidentiary burden with circumstantial evidence. *La Bella Dona Skin Care, Inc.*, 294 Va. at 254 (quoting *First Nat'l Bank v. Pressley*, 176 Va. 25, 28-29 (1940)). The amount of

---

[3] Indebted to both Roadmap and M.C. Dean, GSI was entitled to prefer repaying one creditor over another. *See Darden v. George G. Lee Co.*, 204 Va. 108, 112 (1963) (reasoning that a debtor's preference of one creditor over another "is not sufficient reason . . . to set aside an assignment as it applies to a purchaser for a valuable consideration"). Had the trial court found that GSI was insolvent at the time of the payments, such preferential payment would be prohibited. *Id.* But given that the trial court did not find GSI was insolvent at the time of the payments, that is not the case here.

evidence necessary to void a conveyance depends on the "peculiar facts and circumstances" of the case, *id.* (quoting *Temple v. Jones, Son & Co.*, 179 Va. 286, 298 (1942)), but the law recognizes certain "badges of fraud," *id.* (quoting *Little*, 282 Va. at 204), recurring scenarios that, if proven by "'clear, cogent, and convincing' evidence," establish a prima facie case of fraudulent conveyance and create a presumption of fraud, *id.* (quoting *Hutcheson*, 129 Va. at 289). Badges of fraud include:

> (1) retention of an interest in the transferred property by the transferor; (2) transfer between family members for allegedly antecedent debt; (3) pursuit of the transferor or threat of litigation by his creditors at the time of the transfer; (4) lack of or gross inadequacy of consideration for the conveyance; (5) retention or possession of the property by the transferor; and (6) fraudulent incurrence of indebtedness after the conveyance.

*Little*, 282 Va. at 285.

Once a plaintiff proves a badge of fraud, both the burden of production and the burden of persuasion shift to the defendant. *White v. Llewelyn*, 299 Va. 658, 670 (2021) (requiring the trial court to shift the burden of proof to the defendant after finding the plaintiff has proven a badge of fraud). To rebut the presumption of fraud, a defendant must put forward "strong and clear evidence to establish the bona fides of a presumptively fraudulent conveyance." *Id.* at 668. But to receive the advantage of the presumption, the plaintiff must first prove a badge of fraud. *La Bella Dona Skin Care, Inc.*, 294 Va. at 254.

M.C. Dean did not do so. The trial court never found that M.C. Dean proved a badge of fraud. M.C. Dean argues that the court should have shifted the burden to Roadmap because M.C. Dean notified GSI of its intent to "take further action to secure the balance" if the invoices went unpaid. But the court did not find that this evidence established a badge of fraud. *See White*, 299 Va. at 670 (requiring a finding that the plaintiff has proven a badge of fraud to shift the burden to the defendant). Sitting as factfinder, the court heard evidence of GSI's relationship

- 9 -

with Roadmap. Perch performed a significant amount of work for GSI as a consultant, and GSI paid Roadmap for Perch's work. GSI's "round number" payments to Roadmap may have been suspicious, but M.C. Dean did not contest whether Perch performed the work. While GSI continued to pay Roadmap for Perch's work after M.C. Dean contends the invoices came due, the court noted that GSI's relationship with Roadmap began "long before" GSI's dealings with M.C. Dean. Accordingly, the trial court found that M.C. Dean failed to carry its burden to prove a badge of fraud.

At most, M.C. Dean overcame Roadmap's motion to strike. When denying Roadmap's motion, the court reasoned that, viewing the evidence in the light most favorable to M.C. Dean, GSI's payments to Roadmap potentially invoked the first and fifth badges of fraud because of Perch's work for both Roadmap and GSI. But the court clarified, "I'm not making a ruling as to whether . . . the evidence has been presented sufficient to meet the plaintiff's burden on that point. This is only for purposes of the motion to strike[.]" At this point, M.C. Dean had the benefit of a more favorable standard. The trial court accepted as true all evidence favorable to M.C. Dean and any reasonable inference a factfinder might draw. M.C. Dean did not yet have to prove its case. *See Austin v. Shoney's, Inc.*, 254 Va. 134, 138 (1997) (explaining the motion to strike standard). Thus, unlike in *White*, where the burden shifted to the defendant after the trial court found the plaintiff's evidence sufficient to establish multiple badges of fraud, M.C. Dean never met its initial burden of proving a badge of fraud by "clear, cogent, and convincing evidence." 299 Va. at 664. To shift the burden to Roadmap, M.C. Dean needed the trial court to find that it proved a badge of fraud by clear and convincing evidence.[4]

---

[4] *See White*, 299 Va. at 664 ("At the conclusion of White's presentation of evidence, the circuit court found that White's evidence, which proved several badges of fraud, was sufficient to establish a presumption that the conveyance was fraudulent.").

Given that M.C. Dean did not prove a badge of fraud by clear and convincing evidence, the burden did not shift to Roadmap to prove the legitimacy of its payments to Roadmap. Accordingly, the trial court applied the correct burden of proof when it found M.C. Dean failed to prove the payments were fraudulent by clear and convincing evidence.

> II. The trial court did not abuse its discretion by limiting M.C. Dean's cross-examination of Michael Perch.

Next, M.C. Dean argues the trial court erred by prohibiting M.C. Dean from impeaching Michael Perch on cross-examination. We disagree.

We review evidentiary rulings for abuse of discretion. *Jones v. Williams*, 280 Va. 635, 638 (2010). Under Code § 8.01-401(A), "[a] party called to testify for another, having an adverse interest, may be examined by such other party according to the rules applicable to cross-examination." "If a witness proves adverse, the party who called the witness may, subject to the discretion of the court, prove that the witness has made at other times a statement inconsistent with the present testimony." Va. R. Evid. 2:607(c). While a party has the right to cross-examine a witness, the trial court may limit questioning so long as "such right has been substantially and fairly exercised." *Campbell v. Campbell*, 49 Va. App. 498, 504 (2007) (quoting 1 Michie's Juris., *Witnesses* § 36 (2004)) (holding an arbitrary time limit violated the appellant's right to cross-examination).

"[T]he latitude permissible in cross-examination of witnesses is largely within the sound discretion of the trial court." *Basham v. Terry*, 199 Va. 817, 824 (1958). Though not unfettered, the trial court may limit cross-examination "subject to the rules of evidence." *Campbell*, 49 Va. App. at 504. For example, while a party may cross-examine an adverse witness with leading questions, Va. R. Evid. 2:607(b), whether a party may impeach that witness's credibility with prior inconsistent statements is subject to the trial court's discretion, Va. R. Evid. 2:607(c). *See Mastin v. Theirjung*, 238 Va. 434, 440 (1989) (holding permission of impeachment of an adverse

- 11 -

witness with prior inconsistent statements "is a matter resting within a trial court's sound discretion"). Further, the trial court is entitled to limit cross-examination when it becomes argumentative. *Fields v. Commonwealth*, 2 Va. App. 300, 308 (1986).

The trial court limited M.C. Dean's cross-examination of Perch when it became argumentative. M.C. Dean called Perch as an adverse witness, primarily examining him on how Roadmap helped businesses obtain certifications and Perch's work for GSI. Throughout M.C. Dean's questioning of Perch, the court admonished counsel for testifying for the witness and for arguing. These were not arbitrary limitations on M.C. Dean's opportunity to cross-examine Perch.

Nor was the trial court's limitation of M.C. Dean's impeachment questioning. When questioning Perch about whether GSI was truly a "Woman Owned" business, an issue immaterial to M.C. Dean's claims, M.C. Dean attempted to impeach Perch's credibility with prior inconsistent statements. Roadmap objected, arguing M.C. Dean was not permitted to call an adverse witness for the sole purpose of impeachment. The court sustained the objection, and explained, "if, . . . when Mr. Perch is called by the other side, you want to impeach him with statements . . . , that's appropriate. But at this point, this is your case-in-chief, and there is no foundation for this document." The court's limitation of M.C. Dean's impeachment of Perch on an immaterial matter was not an arbitrary limit on its opportunity to cross-examine Perch.

M.C. Dean had ample opportunity to cross-examine Perch. The only limitations to that opportunity were adverse evidentiary rulings. It was only after M.C. Dean "substantially and fairly exercised" its right to cross-examine Perch that the trial court limited questions as irrelevant, argumentative, or impermissible impeachment. *See Campbell*, 49 Va. App. at 505-06. When it did limit M.C. Dean's questioning, it did so within its discretion under Virginia Rule of Evidence 2:607(c). These limitations were permissible.

A party's right to cross-examination does not strip the court of its authority to manage the trial. Here, the trial court's limitations on M.C. Dean's cross-examination of Perch were not arbitrary, but attempts to curb M.C. Dean from arguing with Perch or impeaching him on an immaterial matter. Accordingly, the trial court did not abuse its discretion.

III. The trial court did not abuse its discretion when it did not rule on M.C. Dean's motion to reconsider.

Finally, M.C. Dean argues the trial court erred by failing to rule on its motion to reconsider, filed five days before the court lost jurisdiction.

We review a trial court's decision on a motion to reconsider for abuse of discretion. *Howe v. Howe*, 30 Va. App. 207, 213 (1999). A trial court may modify, vacate, or suspend any final order for a period of 21 days following the date of entry. Rule 1:1. After that 21-day period, the trial court loses jurisdiction. *See Super Fresh Food Mkts. of Va. v. Ruffin*, 263 Va. 555, 560 (noting a trial court's jurisdiction expires following the 21-day period unless expressly modified, vacated, or suspended). Here, M.C. Dean filed a motion to reconsider on December 20, five days before the court lost jurisdiction, and the trial court never ruled. But given that the trial court lost jurisdiction over the matter, it did not abuse its discretion when it did not rule during that period.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

- 13 -